## IN THE COURT OF COMMON PLEAS CENTRE COUNTY
### JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL DIVISION

| | |
|---|---|
| AQUIL JOHNSON | ) |
|     Plaintiff | ) |
| | ) JURY TRIAL DEMAND |
|     V. | ) |
| | ) |
| 1.) PA. DEPARTMENT OF CORRECTIONS | ) |
|  JOHN E. WETZEL, SECRETARY OF DOC; | ) |
|  MARK GARMAN, SUPER., SCI ROCKVIEW; | ) |
| et al., OFFICERS, AGENTS, SERVANTS, EMPLOYEES,) |
| ATTORNEYS, COMPLICITORS,& CONTRACTORS | ) |
| **(OFFICIAL CAPACITY)** | ) |
| 2.) DR. RICHARD ELLERS CHCA@ ROCKVIEW | ) |
| **(INDIVIDUAL & OFFICIAL CAPACITY)** | ) |
| 3.) CORRECT CARE SOLUTIONS, LLC. | ) |
| OFFICERS, AGENTS, SERVANTS, EMPLOYEES, | ) |
| ATTORNEY, COMPLICITORS;& CONTRACTORS | ) |
| **(INDIVIDUAL & OFFICIAL CAPACITY)** | ) |
| 4.). MICHELLE FISHER, CCS SUPERVISOR | ) |
| **(INDIVIDUAL & OFFICIAL CAPACITY)** | ) |
| 5.) DR. FERNANDO TEJEDA, D.D.S. | ) |
| **(INDIVIDUAL & OFFICIAL CAPACITY)** | ) |
|     Defendants | ) |
| | ) |
| | ) |
| | ) |

## CIVIL COMPLAINT FOR DAMAGES & § 1983 CLAIMS

To the Honorable Judge of the Above said Court:

    This complaint is filed on behalf of Aquil Johnson, plaintiff, at SCI Rockview, 1

Rockview Place, BOX-A Bellefonte, PA.16823-0820, Id. No.JS-6478.

1

Now comes the plaintiff, pro se seeking Damages against the above named defendants and for good cause and in the interest of justice state the following.

1.     This is an Action for damages, relating to the defendants negligent care of the plaintiff resulting from the defendants failure to diligently and reasonably respond to the plaintiff's serious medical dental needs which also accompanied a violation of the plaintiff's Civil Rights.


## PARTIES, JURISDICTION AND VENUE


2.     Plaintiff, Aquil Johnson, # JS-6478, is an inmate in the State Correctional Institution Rockview, is and was at all relevant times an inmate at such facility and all events regarding this matter occurred in Pennsylvania.

3.     Defendant PA. Department of Corrections, John E. Wetzel, Mark Garman et al., is a Pennsylvania State Agency with its principle place of business located at 1920 Technology Parkway, Mechanicsburg, PA.17050-8507. Defendants are subject to the jurisdiction and venue of this court.

4.     Defendant Richard Ellers is the Corrections Health Care Administrator (CHCA) @ SCI Rockview and is responsible for Rockview's Medical Dental department with his principle place of business located at 1 Rockview place, Bellefonte, PA.16823-0820.. Defendant is subject to the jurisdiction and venue of this court.

5.     Defendant Correct Care Solutions LLC or PC (CCS) is the private medical service provider for SCI Rockview and is contracted with the PA. DOC and doing business in the state

of Pennsylvania with their business office lcated at 1283 Murfreesboro Pike # 500, Nashville,

TN. 37217-2421. Defendant is subject to the jurisdiction and venue of this court.

6.      Defendant Jane Doe is the on site Correct Care Solutions Supervisor for the SCI

Rockview medical dental department with her principle place of business located at 1 Rockview

place, Bellefonte, PA.16823-0820.. Defendants are subject to the jurisdiction and venue of this

court.

7.      Defendant Dr. Fernando Tejeda, DDS. Is the SCI Rockview facility Dentist and is

responsible for providing dental treatment to the inmates at SCI Rockview with his principle

place of business located at 1 Rockview place, Bellefonte, PA.16823-0820.. Defendants are

subject to the jurisdiction and venue of this court.


## JURISDICTION AND VENUE

8.      This court's jurisdiction is established in 42 Pa.C.S.§ 931 (a) stating, "court of Common

Pleas shall have unlimited original jurisdiction of all actions and proceedings," and 42 Pa.C.S.§

8523 stating, "Actions for claims against a Commonwealth party may be brought in and only in a

County in which the principle or local office of the Commonwealth party is located or in which

the cause of action arose or where a transaction or occurrence took place out of which the cause

of action arose." Also this Court has concurrent jurisdiction over 1983 claims. See, Murtagh V.

County of Berks, 634 A.2d 179, 183 (Pa.1993).

## VENUE:

9.      Defendants are a Commonwealth Agency and or an Officer, Agent, Employee, Servant or Attorney of a Commonwealth Agency and or a private contractor / vendor for a Commonwealth Agency and events occurred in Pennsylvania From April 16, 2019, to January 6, 2020 in Centre County bringing these persons and subject matter within the jurisdiction of this court.

## ALLEGATIONS COMMON TO ALL CLAIMS

## JOINT AND SEVERAL LIABILITY

10.     Plaintiff, Aquil Johnson is an adult male in the care, custody and control of the defendants Pa. Department of Corrections and as a result, the defendants are responsible for ensuring that plaintiff receive adequate and timely medical dental care.

11.     In 2010, plaintiff came to be in the care, custody and control of the Pa. DOC at SCI Rockview in Centre County Pa.. Consequently, the defendants assumed responsibility for the plaintiff which includes but is not limited to plaintiff's medical and mental health treatment.

12.     In March 2019, plaintiff presented to the Sci Rockview medical office to obtain dental care for an abscessed tooth. Dr. Tejeda was the attending dentist at the time and plaintiff and Dr. Tejeda decided that the best course of action was to place the plaintiff on antibiotics to kill the infection.

13.     Thus, plaintiff was prescribed Penicillin Vee K 500 mg. And 600 mg. Ibuprofen for the pain. After plaintiff completed his round of antibiotics and pain killers, the infection went away and the pain subsided.

4

14.     On April 16, 2019, plaintiff sent a sick call to the SCI Rockview medical dental office because plaintiff's tooth on his lower right side of his mouth had cracked in half which made it hard for plaintiff to eat due to the pain and discomfort. See, Exhibit-P1.

15.     The Rockview medical dental department responded to plaintiff and informed him that he was scheduled for an appointment some time in May 2019. See, Exhibit-P1.

16.     On April 27, 2019, the plaintiff's condition worsened when half of the cracked tooth dislodged from its structure and went down plaintiff's throat. Plaintiff fearing for his life asked the Block officer to call medical so plaintiff could obtain treatment.

17.     The Block officer called medical and medical staff told the block officer to have plaintiff fill out a sick call slip and refused to let the block officer send plaintiff to medical for treatment.

18.     On April 28, 2019, the plaintiff sent a sick call slip to the medical dental department pleading for help and immediate emergency treatment due to the fact that the metal filling was loose and in danger of falling off and possibly being swallowed and cutting plaintiff's throat. See Exhibit-P2.

19.     The Rockview medical dental department once again refused to see plaintiff immediately and instead informed him that he was scheduled for an appointment in May. See, Exhibit-P2.

20.     In between April 16, 2019, and May 15, 2019, the plaintiff suffered from pain and discomfort resulting from the cracking and swallowing of half his tooth and was in fear of death due to the possibility of the other metal half coming dislodged and being swallowed.

21.     On May 15, 2019, plaintiff went to the Rockview medical dental department at which time Dr. Tejeda reconstructed the half of the tooth that was missing and repaired the tooth.

22.     On June 27, 2019, plaintiff sent a sick call to the Rockview medical dental department because plaintiff was suffering from a tooth ache on the left side of his mouth. Plaintiff received no response. See, Exhibit-P3.

23.     On July 7, 2019, plaintiff sent another sick call slip to the Rockview medical dental department because plaintiff was now suffering from several problems with his teeth which caused plaintiff to be in pain and have head aches and neck pains. This time Rockview medical dental department responded stating that plaintiff was scheduled for an appointment in August. See, Exhibit-P4.

24.     On July 15, 2019, plaintiff sent another sick call slip to Rockview medical dental department because the infection had returned and the pain he was experiencing was to much to wait until August to be treated for. Plaintiff received no response. See, Exhibit-P5.

25.     On August 15, 2019, plaintiff sent another sick call slip to Rockview medical dental department because plaintiff was in severe pain and had not been seen or talked to by medical dental staff despite medical dental claiming that plaintiff had an appointment in August. Plaintiff received no response. See, Exhibit-P6.

26.     On September 14, 2019, plaintiff sent another sick call slip to the medical dental department because he was in severe pain and was never seen by the dentist at all. Plaintiff received no response. See, Exhibit-P7.

27.     On November 20, 2019, plaintiff sent request slips to defendant Ellers and defendant Fisher because plaintiff was told a year prior that Fisher and Ellers were responsible for the entire medical dental department. In the request slips plaintiff asked both Ellers and Fisher for

help with getting seen by the dentist to treat his severe tooth ache and infection. Plaintiff received no response. See, Exhibits-P8 And P9.

28.     On December 31, 2019, plaintiff sent another sick call to medical dental because dental would not let the block officer send plaintiff down to get treated. However, plaintiff also sent a request slip to Deputy Superintendent Houser. Plaintiff received no response from medical dental. However, Deputy Houser responded to the request slip stating that he forwarded plaintiff's concerns to CHCA Ellers. See, Exhibits-P10 And P11.

29.     In January 2020, plaintiff sent a sick call to the Physician Assistant as opposed to dental because plaintiff wasn't receiving any responses from the dental department.

30.     On January 6, 2020, plaintiff, was called to the medical department by Physician Assistant. Plaintiff informed Physician Assistant that he only put in sick call for medical because dental refused to see plaintiff and plaintiff was in severe pain.

31.     Physician Assistant informed plaintiff that he haven't been seen by dental yet because dental was backed up but that due to the severity of the pain and infection he will see if dental can squeeze plaintiff in for treatment.

32.     Physician Assistant Matthew Riley went to the dental office and informed them that plaintiff was in serious need of dental treatment and the dental office agreed to see plaintiff at which time plaintiff was placed back on antibiotics and pain killers.

33.     In March 2020, plaintiff's infection came back and plaintiff went to medical had the problematic tooth removed and was placed back on antibiotics and pain killers.

34.     In the mean time, plaintiff filed a grievance regarding the lack of timely dental care. The defendants denied plaintiff's grievance claiming that plaintiff was a no show in August and that

7

plaintiff "must take most of the responsibility for the long period of time that elapsed before the problematic tooth was treated. See, Exhibit-P12C.

35.     Defendants also stated "it is noted that the timing of responses to dental sick call request needs to be improved and the matter was discussed with the Health Care Administrator." See, Exhibit-P12C.

36.     Defendants claim that plaintiff was a no show in August 2019, is completely false where DOC SCI Rockview Policy does not allow the plaintiff to be a no show for any medical dental or mental health call outs. If the plaintiff was scheduled for dental in August 2019, policy requires plaintiff to be locked in his cell until the time of his appointment. See, Exhibit-P13.

37.     At all times from 2010 to present day, defendants had a duty to provide the plaintiff with timely and adequate dental care while he is in their care, custody and control.

38.     By virtue of their individual and collective acts and omissions as described more fully herein, defendants are jointly and severally liable to plaintiff as such acts and omissions have caused plaintiff to suffer indivisible injury for which each defendant is responsible.

39.     As the combined acts and / or omissions of each defendant resulted in the indivisible injury to plaintiff, each of the above named defendant is a joint tortfeasor and is jointly and severally liable to the plaintiff for the negligent acts and omission alleged herein.

8

## COUNT # 1 NEGLIGENCE PER SE

**PA. DEPARTMENT OF CORRECTIONS, JOHN E. WETZEL, MARK GARMAN et al., OFFICERS, AGENTS, SERVANTS, EMPLOYEES, ATTORNEY, COMPLICITORS AND CONTRACTORS NEGLIGENT FAILURE TO TIMELY RESPOND TO THE PLAINTIFF'S SERIOUS AND EMERGENT MEDICAL DENTAL NEEDS.**

40.     Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

### DUTY:

41.     The Pa. DOC defendants duty is well established by law. See, Allen V. Ellis, U.S. Dist. LEXIS 120202 (E.D.PA.2017) (holding, "Inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials.")

42.     See also, DeShaney V. Winnebago Cty. Dep't of Soc. Serv., 489 U.S. 189, 199-200 (1989) (holding, "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") Farmer V. Brennan, 511 U.S. 825, 832 (1994) (holding, "prison officials must ensure that inmates receive adequate food clothing, shelter, and medical care...")

43.     Plaintiff is in the care, custody and control of the Pa. DOC defendants. Therefore, the DOC defendants have a duty to provide adequate and timely medical dental care to plaintiff.

### PER SE NEGLIGENT BREACH OF DUTY:

44.     The Superior Court has held , "the concept of negligence per se establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." Hranec Sheet Metal, Inc. V. Metalico, Inc., 107

A.3d 114, 126 (Pa.Super.2014) citing, Schemberg V. Smicherko, 85 A.3d 1071, 1074 (Pa.Super.2014)

45.     The Superior Court defined negligence per se as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence per se." Hranec Sheet Metal, id. @ 126.

46.     "In order to prove a claim based on negligence per se, the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries." Hranec Sheet Metal, id. @ 126.

47.     Where the defendants negligently failed to timely provide the plaintiff with dental treatment, the defendants jointly and severally violated several regulations which include but are not limited to [1] 37 Pa. Code § 93.12.(a); [2] Pa. DOC Policy 13.1.1; [3] Pa. DOC Policy 13.2.1; and [4] SCI Rockview Policy Handbook Sect. VI.B.7.

## STATUTE & POLICY REGULATIONS

## PROTECTS INTEREST OF PARTICULAR GROUP

48.     37 Pa. Code § 93.12.(a) was enacted for the protection of prison inmates in the State of Pennsylvania and specifically state "every institution will establish procedures to permit inmates to have access to health care professionals, prescribed treatment for serious medical needs, appropriate nutrition, exercise and personal hygiene items."

49.     Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) the Pa. DOC created Policy 13.1.1 & 13.2.1 which specifically state, "every inmate shall have access to regular and specialized medical, mental health, dental services, and emergency health care services on a seven day a week, 24-hour basis." see, Policy, 13.2.1, (pg.1-1)

50.     Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) and DOC Policy 13.1.1 and 13.2.1, the Pa. DOC @ SCI Rockview created a medical policy established in Sect. VI.B.7. of the inmate handbook which specifically states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer. See, (Pg.14)

51.     Clearly, the above statute and policy regulations were created to protect a group of particular individuals namely Pennsylvania prison inmates as opposed to the public generally.

## STATUTE & POLICY REGULATIONS

## CLEARLY APPLY TO DEFENDANTS CONDUCT:

52.    The statute and Policy Regulation as written clearly applies to the defendants conduct because the plaintiff is an inmate in the care custody and control of the defendants PA. DOC at SCI Rockview.

53.    The statute and Policy Regulation circumscribes the defendants conduct when it comes to providing medical dental treatment to inmates in their care, custody and control.

54.    Policy statement to policy 13.1.1. state, "This policy establishes comprehensive health care management procedures by which the Department of Corrections and Contracted Health Care Provider Staff can provide professional Health care services that comply with department policies and procedures, ACA standards, and applicable laws." See, Sect. 11. "Purpose".

55.    Policy statement to 13.1.1. Sect. III Applicability states, "This policy is applicable to all staff, inmates, and Contract staff at facilities under the jurisdiction of the Department." See also, ¶¶ 48-50 supra.

56.    The cover page to 13.1.1. procedures manual state, "These standards may be exceeded, but in all cases these standards are the minimum standards that must be achieved...all procedures set forth in this manual must be met."

57.    The defendants are the Department in which the statute and Policy regulation speak of. Certainly, the statute and Policy regulation apply to the defendants conduct where it is stated on the face of the statute and policy regulation itself.

## DEFENDANTS VIOLATED THE STATUTE & POLICY REGULATIONS:

58.     Defendants violated Policy 13.2.1. Sect. 1.A.2.a. and SCI Rockview Supplemental Handbook Policy Sect. VI.B.7. by not providing plaintiff with same day or next day emergency treatment for his emergency dental needs.

59.     Policy 13.2.1. Sect.1.A.2.a. states, every inmate shall have access to emergency dental care on a "seven day a week, 24-hour basis." See, (Pg.1-1) SCI Rockview Handbook Policy Sect. VI.B.7. states emergent dental issues "can be seen at any time." See, (Pg.14)

60.     On April 16, 2019, plaintiff sent a sick call request to medical dental department because plaintiff tooth had cracked in half and plaintiff had severe difficulties eating due to the pain and discomfort.

61.     Instead of scheduling plaintiff for same day or next day treatment, plaintiff was scheduled to see the facilities dentist in May 2019. See, Exhibit-P1

62.     On April 27, 2019, the plaintiff's condition worsened when half of the cracked tooth dislodged from its structure and was swallowed by plaintiff. Plaintiff informed the Block Officers who then called medical dental department at which time the medical dental department refused to allow the Block officer to send plaintiff to medical and told the officer to tell plaintiff to file a sick call slip.

63.     On April 28, 2019, the plaintiff sent another sick call slip to the medical dental department pleading for help and immediate emergency treatment due to the pain, difficulty eating and the inherent danger of the metal filling on the other half of the tooth falling off and possibly being swallowed and cutting plaintiff's throat. See, Exhibit-P2

13

64.     Instead of scheduling plaintiff for same day or next day treatment, plaintiff was told he was scheduled for May. See, Exhibit-P2

65.     On June 27, 2019, plaintiff sent a sick call to medical dental department because plaintiff was suffering from a tooth ache. Plaintiff received no response.

66.     On July 7, 2019, plaintiff sent another sick call to medical dental department because he was suffering from a tooth ache and infection which caused plaintiff to have head aches, neck pain and swollen neck.

67.     Instead of scheduling plaintiff for same day or next day treatment, plaintiff was informed that he was scheduled for an appointment in August. See, Exhibit-P4

68.     On July 15, 2019, plaintiff sent another sick call slip to medical dental department because of severe pain, infection and neck pains. Plaintiff received no response.

69.     The defendants continued this pattern of behavior all the way until plaintiff was seen by medical staff who then forced dental to treat plaintiff on Jan. 6, 2020. See, ¶¶ 14-36

70.     What constitutes a medical dental emergency is established by Policy 13.2.1. Sect.4 C.2.a.(3) Titled "Dental Classification of Inmate" and states in pertinent part, Dental LOC-4 Emergency Care includes "(b) relief for severe pain, (c) oral and odontogenic infections; and (d) fractures of bones and teeth." See, (pg.4-9).

71.     Additionally, Rockview Handbook Policy states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer." See, (Sect. VI.B.7., pg.14)

72.     On April 16, 2019, and April 27, 2019, plaintiff complained of a cracked, thereafter broken tooth, severe pain and discomfort. Plaintiff was not seen until May 15, 2019, despite the

14

policy stating, "fractures of bones and teeth and severe pain" are classified as dental emergencies.

73.     On June 27, 2019, July 7, 2019, July 15, 2019, August 15, 2019, September 14, 2019, November 20, 2019, December 31, 2019, plaintiff complained of severe pain, swelling and infection inter alia. Plaintiff was not seen until January 6, 2020, despite the policy stating "oral and odontogenic infections, severe pain and swelling" are classified as dental emergencies.

74.     Where the plaintiff was not seen or treated same day or next day for a cracked and broken tooth, severe pain, swelling and infection, the defendants most certainly violated Policy 13.1.1., 13.2.1. and handbook policy Sect. VI.B.7..

75.     Indeed, Policy 13.1.1. demands "in all cases these standards must be achieved and all procedures set forth in this manual must be met." Therefore, the record reflects the defendants in fact violated the statutes and Policy Regulations.

**VIOLATION OF THE STATUTE IS THE DIRECT**

**AND PROXIMATE CAUSE OF PLAINTIFF INJURY:**

76.     As a direct and proximate consequence of the defendants negligent conduct in violating policy 13.1.1., 13.2.1., and Rockview Handbook Policy Sect. VI.B.7. plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

77.     As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

78.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks.

79.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial.

80.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expresses and will in the future incur medical expenses in an amount to be proven at trial.

81.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

82.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendant's negligent conduct in an amount to be proven at trial.

## COUNT # 2 NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**PA. DEPARTMENT OF CORRECTIONS, JOHN E. WETZEL, MARK GARMAN et al., OFFICERS, AGENTS, SERVANTS, EMPLOYEES, ATTORNEYS, COMPLICITORS AND CONTRACTORS NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON PLAINTIFF.**

83.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow:

84.    Pennsylvania recognizes an independent cause of action for negligent infliction of emotional distress. (NIED). See, Toney V. Chester County Hosp., 36 A.3d 94-95 (Pa.2011) (Holding, "we consider the standard elements of negligent claims: duty, breach, causation and damages.") Toney, @ 95.

### DUTY

85.    Plaintiff is a prisoner within the care, custody and control of the defendants. As such, the defendants has an affirmative duty to care for the plaintiff's medical and mental well-being. See, Hunt V. Pa.DOC., 698 A.2d 147, 150 (Cmwlth.1997) (DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined.")

86.    DeShaney V. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) (Holding, "when the state takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

87.    Defendants owed plaintiff a duty to use ordinary care in avoiding causing emotional harm or distress to the plaintiff. Given the circumstances of the special relationship between plaintiff

17

and the defendants, it was reasonably foreseeable that harm to the plaintiff would result from a breach of the duty owed to the plaintiff.

88. Part of the defendants duty is to use competence, skill, care and diligence in providing medical dental treatment to the plaintiff. This includes providing timely care for medical dental emergencies and what constitutes medical emergencies under these particular circumstances.

## BREACH OF DUTY:

89. Defendants breached this duty by failing to provide plaintiff with timely dental treatment when he was suffering from dental emergencies on two different occasions.

90. On April 16, 2019, plaintiff sent a sick call to the defendants because plaintiff had cracked a tooth which was causing pain and making it hard for plaintiff to eat. See, Exhibit-

91. Instead of seeing plaintiff immediately, the defendants refused to see plaintiff and scheduled plaintiff for treatment a month down the line in May 2019. This was done despite the defendants knowledge that it was reasonably foreseeable that plaintiff would suffer more pain and mental and emotional distress without treatment in between April 16, 2019 and May 15, 2019.

92. On April 27, 2019, plaintiff's condition worsened when half of his cracked tooth fell off and went down his throat. Again, defendant refused to treat plaintiff immediately and instead told plaintiff to fill out another sick call slip despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

18

93.    On April 28, 2019, plaintiff sent another sick call to the defendants explaining that

plaintiff's condition made it impossible for him to eat, that plaintiff was in pain and that plaintiff

was in fear that the mental filling could come off and hurt him. See, Exhibit-P2

94.    Despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain,

damage and mental and emotional distress without immediate treatment, defendants still refused

to treat plaintiff and instead scheduled his appointment for a month later. See, Exhibit-P2

95.    On June 27, 2019, plaintiff sent the first of several sick call slips to the defendants

because plaintiff was suffering from severe pain and infection. Instead of seeing plaintiff

immediately, the defendant refused to treat plaintiff and scheduled his appointment in August

despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage

and mental and emotional distress without immediate treatment.

96.    The defendants conduct of ignoring plaintiff continued all the way until January 6, 2020,

despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage

and mental and emotional distress without immediate treatment.

97.    Defendants also violated several administrative policies which were applicable to treating

plaintiff's specific condition. Defendants violated DOC Policy 13.2.1 which state that plaintiff

was required to have access to treatment for broken teeth, severe pain and infection 24 hours a

day 7 days a week. The policy also state if treatment was refused in the past, once treatment is

requested again the inmate shall be re-prioritized according to his specific condition. See, 13.2.1

Sect. 1 A.2.a.; Sect. 4C.2.a.(3); Sect. 4C.1.(4)(b)and(c)..

98.    As a result of defendants individual and collective acts or omissions, the defendants

breach their duty to protect the plaintiff from pain and suffering, mental and emotional distress

resulting from their conduct where it was reasonably foreseeable that plaintiff would suffer such harm from the breach of this duty.

### DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

99.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

100.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

101.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1

102.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit-M1

103.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical expenses in amount to be proven at trial.

104.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

105.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1

### COUNT # 3 NEGLIGENCE PER SE

**RICHARD ELLERS NEGLIGENT FAILURE TO TIMELY RESPOND TO THE PLAINTIFF'S SERIOUS AND EMERGENT MEDICAL DENTAL NEEDS.**

106.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

### DUTY:

107.    The Pa. DOC defendants duty is well established by law. See, Allen V. Ellis, U.S. Dist. LEXIS 120202 (E.D.PA.2017) (holding, "Inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials.")

108.    See also, DeShaney V. Winnebago Cty. Dep't of Soc. Serv., 489 U.S. 189, 199-200 (1989) (holding, "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") Farmer V. Brennan, 511 U.S. 825, 832 (1994) (holding, "prison officials must ensure that inmates receive adequate food clothing, shelter, and medical care...")

109.    Plaintiff is in the care, custody and control of the Pa. DOC defendants. Therefore, the DOC defendants have a duty to provide adequate and timely medical dental care to plaintiff.

110.    Richard Ellers is the Corrections Health Care Administrator @ SCI Rockview and Consequently has a duty to plaintiff to ensure that he receives adequate and timely medical dental treatment.

## PER SE NEGLIGENT BREACH OF DUTY:

111.    The Superior Court has held , "the concept of negligence per se establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." Hranec Sheet Metal, Inc. V. Metalico, Inc., 107 A.3d 114, 126 (Pa.Super.2014) citing, Schemberg V. Smicherko, 85 A.3d 1071, 1074 (Pa.Super.2014)

112.    The Superior Court defined negligence per se as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence per se." Hranec Sheet Metal, id. @ 126.

113.    "In order to prove a claim based on negligence per se, the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries." Hranec Sheet Metal, id. @ 126.

114.    Where the defendants negligently failed to timely provide the plaintiff with dental treatment, the defendants jointly and severally violated several regulations which include but are not limited to **[1]** 37 Pa. Code § 93.12.(a); **[2]** Pa. DOC Policy 13.1.1; **[3]** Pa. DOC Policy 13.2.1; and **[4]** SCI Rockview Policy Handbook Sect. VI.B.7.

## STATUTE & POLICY REGULATIONS

## PROTECTS INTEREST OF PARTICULAR GROUP

115.    37 Pa. Code § 93.12.(a) was enacted for the protection of prison inmates in the State of Pennsylvania and specifically state "every institution will establish procedures to permit inmates to have access to health care professionals, prescribed treatment for serious medical needs, appropriate nutrition, exercise and personal hygiene items."

116.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) the Pa. DOC created Policy 13.1.1 & 13.2.1 which specifically state, "every inmate shall have access to regular and specialized medical, mental health, dental services, and emergency health care services on a seven day a week, 24-hour basis." see, Policy, 13.2.1, (pg.1-1)

117.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) and DOC Policy 13.1.1 and 13.2.1, the Pa. DOC @ SCI Rockview created a medical policy established in Sect. VI.B.7. of the inmate handbook which specifically states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer. See, (Pg.14)

118.    Clearly, the above statute and policy regulations were created to protect a group of particular individuals namely Pennsylvania prison inmates as opposed to the public generally.

23

## STATUTE & POLICY REGULATIONS

## CLEARLY APPLY TO DEFENDANTS CONDUCT:

119.    The statute and Policy Regulation as written clearly applies to the defendants conduct because the plaintiff is an inmate in the care custody and control of the defendants PA. DOC at SCI Rockview.

120.    The statute and Policy Regulation circumscribes the defendants conduct when it comes to providing medical dental treatment to inmates in their care, custody and control.

121.    Policy statement to policy 13.1.1. state, "This policy establishes comprehensive health care management procedures by which the Department of Corrections and Contracted Health Care Provider Staff can provide professional Health care services that comply with department policies and procedures, ACA standards, and applicable laws." See, Sect. 11. "Purpose".

122.    Policy statement to 13.1.1. Sect. III Applicability states, "This policy is applicable to all staff, inmates, and Contract staff at facilities under the jurisdiction of the Department." See also, ¶¶ 115-117supra.

123.    The cover page to 13.1.1. procedures manual state, "These standards may be exceeded, but in all cases these standards are the minimum standards that must be achieved...all procedures set forth in this manual must be met."

124.    The defendants are the Person[s] in which the statute and Policy regulation speak of. Certainly, the statute and Policy regulation apply to the defendants conduct where it is stated on the face of the statute and policy regulation itself.

**DEFENDANTS VIOLATED THE STATUTE & POLICY REGULATIONS:**

125.   Defendants violated Policy 13.2.1. Sect. 1.A.2.a. and SCI Rockview Supplemental Handbook Policy Sect. VI.B.7. by not providing plaintiff with same day or next day emergency treatment for his emergency dental needs.

126.   Policy 13.2.1. Sect.1.A.2.a. states, every inmate shall have access to emergency dental care on a "seven day a week, 24-hour basis." See, (Pg.1-1) SCI Rockview Handbook Policy Sect. VI.B.7. states emergent dental issues "can be seen at any time." See, (Pg.14)

127.   On April 16, 2019, plaintiff sent a sick call request to medical dental department because plaintiff tooth had cracked in half and plaintiff had severe difficulties eating due to the pain and discomfort.

128.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was scheduled to see the facilities dentist in May. See, Exhibit-P1

129.   On April 27, 2019, the plaintiff's condition worsened when half of the cracked tooth dislodged from its structure and was swallowed by plaintiff. Plaintiff informed the Block Officers who then called medical dental department at which time the medical dental department refused to allow the Block officer to send plaintiff to medical and told the officer to tell plaintiff to file a sick call slip.

130.   On April 28, 2019, the plaintiff sent another sick call slip to the medical dental department pleading for help and immediate emergency treatment due to the pain, difficulty eating and the inherent danger of the metal filling on the other half of the tooth falling off and possibly being swallowed and cutting plaintiff's throat. See, Exhibit-P2

131.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was told he was scheduled for May. See, Exhibit-P2

132.   On June 27, 2019, plaintiff sent a sick call to medical dental department because plaintiff was suffering from a tooth ache. Plaintiff received no response.

133.   On July 7, 2019, plaintiff sent another sick call to medical dental department because he was suffering from a tooth ache and infection which caused plaintiff to have head aches, neck pain and swollen neck.

134.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was informed that he was scheduled for an appointment in August. See, Exhibit-P4

135.   On July 15, 2019, plaintiff sent another sick call slip to medical dental department because of severe pain, infection and neck pains. Plaintiff received no response.

136.   The defendants continued this pattern of behavior all the way until plaintiff was seen by medical staff who then forced dental to treat plaintiff on Jan. 6, 2020. See, ¶¶ 14-36

137.   What constitutes a medical dental emergency is established by Policy 13.2.1. Sect.4 C.2.a.(3) Titled "Dental Classification of Inmate" and states in pertinent part, Dental LOC-4 Emergency Care includes "(b) relief for severe pain, (c) oral and odontogenic infections; and (d) fractures of bones and teeth." See, (pg.4-9).

138.   Additionally, Rockview Handbook Policy states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer." See, (Sect. VI.B.7., pg.14)

139.   On April 16, 2019, and April 27, 2019, plaintiff complained of a cracked, thereafter broken tooth, severe pain and discomfort. Plaintiff was not seen until May 15, 2019, despite the

policy stating, "fractures of bones and teeth and severe pain" are classified as dental emergencies.

140.    On June 27, 2019, July 7, 2019, July 15, 2019, August 15, 2019, September 14, 2019, November 20, 2019, December 31, 2019, plaintiff complained of severe pain, swelling and infection inter alia. Plaintiff was not seen until January 6, 2020, despite the policy stating "oral and odontogenic infections, severe pain and swelling" are classified as dental emergencies.

141.    Where the plaintiff was not seen or treated same day or next day for a cracked and broken tooth, severe pain, swelling and infection, the defendants most certainly violated Policy 13.1.1., 13.2.1. and handbook policy Sect. VI.B.7..

142.    Indeed, Policy 13.1.1. demands "in all cases these standards must be achieved and all procedures set forth in this manual must be met." Therefore, the record reflects the defendants in fact violated the statues and Policy Regulations.

## VIOLATION OF THE STATUTE & POLICY REGULATION

## IS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF INJURY:

143.    As a direct and proximate consequence of the defendants negligent conduct in violating policy 13.1.1., 13.2.1., and Rockview Handbook Policy Sect. VI.B.7. plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

144.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

145.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks.

146.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial.

147.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expresses and will in the future incur medical expenses in an amount to be proven at trial.

148.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be regarded to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

149.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendant's negligent conduct in an amount to be proven at trial.

## COUNT # 4 NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**RICHARD ELLERS NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON PLAINTIFF.**

150.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow:

151.    Pennsylvania recognizes an independent cause of action for negligent infliction of emotional distress. (NIED). See, Toney V. Chester County Hosp., 36 A.3d 94-95 (Pa.2011) (Holding, "we consider the standard elements of negligent claims: duty, breach, causation and damages.") Toney, @ 95.

### DUTY

152.    Plaintiff is a prisoner within the care, custody and control of the defendants. As such, the defendants has an affirmative duty to care for the plaintiff's medical and mental well-being. See, Hunt V. Pa.DOC., 698 A.2d 147, 150 (Cmwlth.1997) (DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined.")

153.    Richard Ellers is the Corrections Health Care Administrator @ SCI Rockview. Consequently, he owed plaintiff a duty to ensure that plaintiff received adequate and timely medical dental treatment.

154.    DeShaney V. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) (Holding, "when the state takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

155.   Defendants owed plaintiff a duty to use ordinary care in avoiding causing emotional harm or distress to the plaintiff. Given the circumstances of the special relationship between plaintiff and the defendants, it was reasonably foreseeable that harm to the plaintiff would result from a breach of the duty owed to the plaintiff.

156.   Part of the defendants duty it to use competence, skill, care and diligence in providing medical dental treatment to the plaintiff. This includes providing timely care for medical dental emergencies and what constitutes medical emergencies under these particular circumstances.

## BREACH OF DUTY:

157.   Defendants breached this duty by failing to provide plaintiff with timely dental treatment when he was suffering from dental emergencies on two different occasions.

158.   On April 16, 2019, plaintiff sent a sick call to the defendants because plaintiff had cracked a tooth which was causing pain and making it hard for plaintiff to eat. See, Exhibit-

159.   Instead of seeing plaintiff immediately, the defendants refused to see plaintiff and scheduled plaintiff for treatment a month down the line in May 2019. This was done despite the defendants knowledge that it was reasonably foreseeable that plaintiff would suffer more pain and mental and emotional distress without treatment in between April 16, 2019 and May 15, 2019.

160.   On April 27, 2019, plaintiff's condition worsened when half of his cracked tooth fell off and went down his throat. Again, defendant refused to treat plaintiff immediately and instead told plaintiff to fill out another sick call slip despite the fact that it was reasonably foreseeable

that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

161.    On April 28, 2019, plaintiff sent another sick call to the defendants explaining that plaintiff's condition made it impossible for him to eat, that plaintiff was in pain and that plaintiff was in fear that the mental filling could come off and hurt him. See, Exhibit-P2

162.    Despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment, defendants still refused to treat plaintiff and instead scheduled his appointment for a month later. See, Exhibit-P2

163.    On June 27, 2019, plaintiff sent the first of several sick call slips to the defendants because plaintiff was suffering from severe pain and infection. Instead of seeing plaintiff immediately, the defendant refused to treat plaintiff and scheduled his appointment in August despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

164.    The defendants conduct of ignoring plaintiff continued all the was until January 6, 2020, despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

165.    Defendants also violated several administrative policies which were applicable to treating plaintiff's specific condition. Defendants violated DOC Policy 13.2.1 which state that plaintiff was required to have access to treatment for broken teeth, severe pain and infection 24 hours a day 7 days a week. The policy also state if treatment was refused in the past, once treatment is requested again the inmate shall be re-prioritized according to his specific condition. See, 13.2.1 Sect. 1 A.2.a.; Sect. 4C.2.a.(3); Sect. 4C.1.(4)(b)and(c)..

31

166.   As a result of defendants individual and collective acts or omissions, the defendants breach their duty to protect the plaintiff from pain and suffering, mental and emotional distress resulting from their conduct where it was reasonably foreseeable that plaintiff would suffer such harm from the breach of this duty.

## DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

167.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

168.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

169.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1

170.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit

171.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical expenses in amount to be proven at trial.

172.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

173.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1

## COUNT # 5 § 1983, 8th AMENDMENT VIOLATION

## RICHARD ELLERS DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL DENTAL NEEDS.

174.   Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

175.   An Eighth Amendment deliberate indifference claim requires a prisoner to show that he had a serious medical need and that the defendants failed to reasonably respond to it either by denying access to treatment or by delaying access to treatment. Estelle V. Gamble, 429 U.S. 97 (1976)

176.   Regarding unreasonably delayed treatment, courts have held if pain and suffering are unnecessarily prolonged then the deliberate indifference standard is met. Kikumura V. Osagie, 161 F.3d 1269 (10th Cir.2006).

### PLAINTIFF HAD A SERIOUS MEDICAL DENTAL NEED:

**The First Incident:**

177.   On April 16, 2019, plaintiff suffered a cracked tooth and was experiencing pain, discomfort and difficulty eating as a result of his injury. See, ¶ 14.

178.   On April 27, 2019, plaintiff conditioned worsened when half of the cracked tooth broke off and went down plaintiff's throat. As a result, plaintiff experienced more pain, discomfort and eating was virtually impossible. See, ¶ 16.

**The Second Incident:**

179.   On June 27, 2019, plaintiff was suffering from a tooth ache which substantially effected plaintiff's mobility in his everyday activities.

180.    On July 7, 2019, plaintiff's condition worsened and on top of the severe tooth ache, plaintiff began to suffer from head ache and neck pains resulting from tooth ache.

181.    On July 15, 2019, plaintiff's condition deteriorated even more and plaintiff was suffering from severe tooth ache, head aches, neck pain and infection.

182.    By December, 31, 2019, plaintiff's condition made another turn for the worse and plaintiff was now suffering from severe pain, tooth ache, head ache, neck pains, swollen neck and infection. See, ¶ 28.

183.    On both occasions plaintiff's condition was a medical dental emergency requiring immediate treatment as defined by DOC Policy, Medical Journals and case law.

**DOC POLICY SUPPORT:**

184.    Policy 13.2.1. Sect. 1.A.2.a.., states, ""Every inmate shall have access to.. dental services and emergency health care services on a seven day a week, 24 hour basis." (See, (Pg.1-1) Exhibit-DP1.

185.    Policy 13.2.1, has classification protocol for dental treatment which separates the levels of care into four different categories ranging for level 4 being the most serious to level 1 being the least serious. See, 13.2.1., Glossary of Terms. (Pg.xiii)

186.    Policy 13.2.1. clearly defines and identify what dental conditions fit into each category. The classifications are (A) Dental LOC-4-Emergency Care; (B) Dental LOC-3-Urgent Care; (c) Dental LOC-2-Non Emergency Care; and (D) Dental LOC-1- Preventive Care. See, Policy 13.2.1. Sect.4.2. (Pg.4-9 to 4-11).

187.    Policy 13.2.1. Sect.4.C.2.a.(3)(b)(c)(d) classify "Severe pain, oral and odontogenic infections, and fractures of bones and teeth" as Dental LOC-4 emergencies. See, (Pg.4-9)

188.   SCI Rockview Institutional Policy states "Emergent dental issues such as broken teeth, severe pain or swelling can be seen at any time." See, Rockview Inmate Handbook Sect.VI.B.7 (Pg.14)

## MEDICAL JOURNAL MERCK MANUAL SUPPORT:

189.   In the Merck Manual, the Section titled "Dental Emergencies" It classifies "Fractured and Avulsed teeth" Tooth ache and Infection" as a medical Emergency requiring immediate care. See, (Merck Manual, Sect.5 Chapt.58, Pg.524-527)

## CASE LAW SUPPORT:

190.   Numerous decided cases establish that a broken tooth, tooth ache, swelling and infection constitutes a serious medical need.

191.   See, e.g., Goodnow V. Palm, 264 F.Supp.2d 125, 132-133 (D.Vt.2003) (Painful broken tooth was a serious need.); Brownlee V. Conine, 957 F.2d 353, 354 (7th Cir.1992) (claim of denial of dental care for a painful condition was not frivolous.); Williamson V. Brewingtoncarr, 173 F.Supp. 2D 235, 239 (D.Del.2001) (Infected tooth was a serious need.); Wall v. Dion, 257 F.Supp. 2D 316, 319 (D.Me.2003)(Same); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997) (same); Ramos V. O'Connell, 28 F.Supp. 2D 796, 803-804 (W.D.Ny. 1998) (Same) Fields V. Gander, 734 F.2d 1313, 1315 (8th Cir.1984) (Same).

192.   Based upon all the above, it is beyond dispute that the plaintiff's broken tooth, severe pain, swollen neck, head aches and infection was a serious medical need.

36

<u>**DEFENDANT ELLERS HAD KNOWLEDGE OF PLAINTIFF'S SERIOUS MEDICAL**</u>

<u>**DENTAL NEED:**</u>

193.    Defendant Ellers is the Health Care Administrator at SCI Rockview and is Responsible for overseeing all medical departments including dental and is also responsible for ensuring emergency treatment inter alia.

194.    DOC POLICY 13.2.1 Sect.4.H., specifically place responsibility on defendant Ellers to make himself aware of the activities of the dental department and is responsible for reviewing and approving a "Monthly Dental Activity Report" and a "Monthly Backlog Report." See, (Pg.4-28 to 4-29)

195.    Policy 13.2.1. Specifically state that "the purpose of the Backlog Report is to track the numbers of inmates waiting for various kinds of dental services and the length of time that they have been waiting." See, (Pg.4-29)

196.    Additionally, plaintiff sent defendant Ellers a request slip explaining to him all the problems plaintiff was having and specifically requested his help. See, Exhibit-????

197.    Moreover, defendant Ellers was the initial respondent to plaintiff's grievance in which he claimed that plaintiff's condition was not considered an emergency by policy and that the time dental took to respond was appropriate. The 12-31-2019, request slip that plaintiff sent to Deputy Superintendent Morris Houser was also forwarded to defendant Ellers, See, Exhibit?? and ??

198.    Therefore, based upon all the above, defendant Ellers had knowledge of the plaintiff's serious medical dental needs.

37

## DEFENDANT ELLERS FAILED TO REASONABLY AND TIMELY RESPOND

199.   The first incident begun on April 16, 2019, the defendants failed to schedule the plaintiff for treatment all the way until May 15, 2019, even though the defendant knew that plaintiff was in pain and suffering.

200.   The second incident begun in June 2019, and the defendants (according to them) did not schedule the plaintiff until August 2019, but never called the plaintiff for treatment until January 6, 2020, even though the defendant knew that plaintiff was in pain and suffering.

201.   The Defendants prescribed the plaintiff pain medication for the exact problem plaintiff was being treated for each time he was able to obtain an appointment which shows that the defendant knew and acknowledged plaintiff was in pain and suffering. See, Cooper V. Casey, 97 F.3d 914, 916-917 (7th Cir.1996) (finding doctors prescription of pain medication verified and proved the prisoner was in pain.)

202.   DOC Policy 13.2.1. demands same day treatment for plaintiff's dental issues and this was not followed. Rockview's Institutional policy demanded same day treatment for plaintiff's dental issues and this too was not followed. The medical journal the Merck Manual suggest same day treatment for the plaintiff's dental issues and this was also not followed.

203.   Additionally, the defendants admitted to plaintiff in his last grievance response that the defendant did not respond in a timely manner and that their response time needs to be improved. See, Exhibit-P12

204.   Besides the violation of DOC Policy and Medical Literature, there are several case law that establish the defendants delay in treating the plaintiff was unreasonable and harsh.

205. See, e.g., Fambro V. Fulton County, Ga., 713 F.Supp. 1426, 1429-1431 (N.D.Ga.1989) (Three week delay in dental care unreasonable); Fields V. Gander, 734 F.2d 1313, 1315)8th Cir.1984)(Three week delay in providing treatment unreasonable); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997)(Three month delay in providing dental treatment unreasonable); Goodnow V. Palm, 264 F.3d 125, 130-134 (D.Vt.2003)(Seven month delay in providing dental treatment unreasonable.); Scicluna V. Wells, 345 F.3d 441, 446 (6th Cir.2003) (Three week delay in examining prisoner unreasonable.)

206.  In Oke V. Garman, 2019 U.S. Dist. LEXIS 30440 (M.D.Pa. Feb.25, 2019) the defendants in the instant case did the exact same thing to Oke. In that case, Oke had sent several sick call slips to see dental because he was in severe pain due to a "rotten" wisdom tooth that had "cracked" had a "big hole" and was "black." Id.

207.  The Rockview medical defendant ignored Oke's sick call request for six weeks up until the dental department was forced to treat Oke upon the demands of C/O's. The U.S. District court held that Oke "sufficiently pleaded an Eighth Amendment claim" against the Health Care Administrator Ellers, a nurse and both of SCI Rockview's dentist Italia and Tajeda.

208.  Based upon all the above, plaintiff respectfully avers that he has sufficiently plead an Eighth Amendment claim against the defendant.

## ADDRESSING THE DEFENDANTS CLAIMS MADE IN
## RESPONSE TO THE PLAINTIFF'S GRIEVANCE

209.  Plaintiff is addressing the defendants claims which were used as justification for denying plaintiff's grievance only to deter the defendants from wasting this court's time by injecting the same baseless arguments in these proceedings.

39

**DEFENDANTS NO SHOW CLAIM:**

210.    When defendant Ellers responded to plaintiff's grievance, defendant Ellers claimed that plaintiff was a no show for his August appointment. This contention is completely false.

211.    For one, in SCI Rockview, any time an inmate is scheduled for a call out for the medical building, the inmate is locked in his cell until the time for his appointment at which time the officer comes and gives the prisoner his pass and lets him out of the cell. This same policy prohibits the inmate from being a no show for any treatment building call outs. See, Exhibit-P13 (Medical Lay-in policy).

212.    Besides that, there is no way in hell the plaintiff would not have showed up to his appointment if he in fact did have one in August. Assuming arguendo that this appointment did exist, the medical lay-in policy should have been followed and medical dental should have called the block for the plaintiff.

213.    The onus was on the defendants to make sure the plaintiff receives his appointment as scheduled due to the fact that plaintiff, being a prisoner, cannot force the corrections officers nor the medical dental department to allow him to get treatment.   What ever the case, the people holding the plaintiff hostage are the ones who must assume responsibility for the operations of their facility. After all, plaintiff cannot move without their permission.

**DEFENDANTS REFUSAL OF TREATMENT CLAIM:**

214.    When defendant Ellers responded to plaintiff's grievance, defendant Ellers also claimed that plaintiff refused recommended treatment for an infection.

215.    This is completely false. Each time plaintiff was able to see the dentist for treatment plaintiff and the dentist both agreed to a course of action that consisted of treating the infection with antibiotics and pain killers.

216.    Accordingly, if the plaintiff had refused recommended treatment, the defendant was required to follow the dental infection protocol as established by the policy that dictates their conduct.

217.    Policy 13.2.1. Sect.4.C.1.a., specifically state, "when an inmate refuses to accept recommended dental treatment, the procedures outlined in department Policy 13.1.1., "Management and Administration of Health Care shall be followed." See, Exhibit-DP2.

218.    Policy 13.1.1. Sect.8.E.3.a., ""Refusal of Medical Treatment" Specifically states, "If the inmate's refusal to accept treatment poses a potential emergency, then the following procedures shall be followed: a. the physician shall admit the inmate to the infirmary as a medical admission."

219.    In defendant's response to plaintiff's grievance, Ellers specifically stated plaintiff's visit "was for a potentially serious issue if not treated." Ellers stated that plaintiff refused treatment for this "serious issue". However, plaintiff was not admitted to the infirmary on either occasion that defendant Ellers claimed that plaintiff had refused treatment. See, Exhibit-P12

220.    If in fact plaintiff did refuse treatment on all these occasions as defendant claimed, then, the defendant was required to follow the dictates of Policy 13.1.1. and 13.2.1. because of the Policy demand that the Policy must be followed in all circumstances.

41

221.    Additionally, assuming arguendo that plaintiff did refuse such treatment, Policy 13.2.1.Sect.4.C.1.4.(c) states the plaintiff was required to be re-prioritized for scheduling once he requested treatment again.

222.    Based upon all the above, plaintiff's alleged refusal of treatment cannot suffice to excuse the defendants from their conduct which unreasonably delayed plaintiff's medical dental treatment.

**DEFENDANTS NON-EMERGENCY CLAIM:**

223.    Defendant Ellers also claimed in his grievance response that plaintiff scheduling was so long because plaintiff's condition was not an emergency.

224.    This was false because each of the plaintiff's conditions were classified as a medical dental emergency by Policy, Medical Journals and case law. See, ¶¶ 184-192.

225.    Besides that, the defendant could not have possibly determined if plaintiff was suffering from an emergency or not if the defendants never examined the plaintiff to assess the issue.

226.    The non-emergency excuse was the same excuse used by the defendants in the Oke case and was rejected by the U.S. District Court because the defendants claimed to have made that determination without ever having examined Oke. See, Oke V. Garman, 2019 U.S. Dist. LEXIS 30440 (M.D. Pa. Feb. 25, 2019.) ("This determination was made without assessing the plaintiff's condition, and despite the fact that the plaintiff claimed to be in extreme and severe pain.")

227.    In any event, all of the circumstances of this particular case, makes clear that the plaintiff was in fact suffering a legal and medical emergency each time he sought help from the defendants.

228.    Wherefore, plaintiff seeks appropriate damages against all defendants.

## COUNT-6 NEGLIGENCE STRICT LIABILITY

## CORRECT CARE SOLUTIONS et al. NEGLIGENT FAILURE TO TIMELY RESPOND TO THE PLAINTIFF'S SERIOUS AND EMERGENT MEDICAL DENTAL NEEDS.

### DUTY

229.   Correct care Solutions is the Contracted medical service provider for SCI Rockview. As such, there duty stems from there contract obligations, Strict liability under the doctrine of respondeat Superior and there special relationship in rendering services that are necessary for the protection of inmates.

**Contract Duty:**

230.   In Evans V. Otis Elevator Company, 168 A.2d 573 (Pa.1961) the Supreme Court held that a contract can create affirmative duties to act on the behalf of third parties. "A party to a contract by the very nature of his contractual undertakings may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such a manner that third persons-strangers to the contract- will not be injure thereby." Id.

231.   In Such circumstances, it is not the terms of the contract itself which create the duty, but rather the nature of the undertaking, which the law may deem essential to the safety of others. Gadbois V. Leb-Co.1 Builders, Inc., 458 A.2d 535 (Pa.Super.1983)

232.   The contractual undertaking at issue in this case is the administering of medical dental and mental health treatment to inmates in the Pennsylvania prison system. The CCS defendants sole purpose for existing is to provide medical, dental and mental health treatment to third party inmates.

233.    Consequently, any contract with the DOC defendants, by its very nature, necessarily implicates inmate third parties and imposes a fiduciary duty on the parties to the contract to act with good faith, trust, confidence, candor, skill, prudence, knowledge and diligence on behalf of those third party inmates.

**Respondent Superior Strick Liability Duty:**

234.    Pennsylvania adheres to the common law doctrine of Respondeat Superior. The doctrine deliberately allocates risks to one who employs others.

235.    The Pennsylvania Supreme Court has held that holding employers strictly liable for negligence committed by their employees provides the greatest incentive to be careful in selecting employees, and in conducting business. See, Santiago V. City of Philadelphia, 435 F.Supp. 136 (E.D. Pa.1977).

236.    Liability under respondeat Superior is not based upon wrongdoing by the employer; it is vicarious liability, which can exist even where the master or principle is not himself negligent, and has done all he can to prevent his servant's negligence. Commonwealth Dept. Of Pub. Welfare V. Hickey, 582 A.2d 734 (Cmwlth. Ct.1990).

**Corporate Negligence Liability Duty:**

237.    In Murzynski V. Erie County, 2016 U.S. Dist. LEXIS 139672 (W.D.Pa.2016) the U.S. District Court applied the Supreme Court's decision in Thompson V. Nason Hosp., 591 A.2d 703, 708 (Pa.1991) and the Superior Court's decision in Scampone V. Grane Health Care Co., 11 A.3d 967, 991 (Pa.Super.2010) in holding a duty existed between the inmate and the prison's mental health services provider.

238.    In Murzynski the Court held that the doctrine of Corporate negligence extended to the defendants because the defendants rendered services that are necessary for the protection of inmates at the prison and as such, the defendants should recognize that failure to exercise reasonable care to perform duties increases the risk of harm to inmates.

239.    Where Correct Care Solutions renders services that are necessary for the protection of inmates, they too have a corporate duty to the inmate whom they serve.

240.    Therefore, Correct Care Solutions duty is established under either or all of the above theory's of liability.

### BREACH OF DUTY:

241.    Defendant Correct Care Solutions breach their duty of Care by:

(a.)    Failing to Supervise the quality of care their employees were supplying to inmates;

(b.)    failing to select and retain only competent personnel;

(c.)    failing to adequately enforce rules and Policies to ensure quality care for patients (Thompson V. Neson Hospital, 591 A.2d 703 (Pa.1991));

(e.)    failing to exercise reasonable care in monitoring patient records and employee efficiency;

(f.)    Failing to exercise reasonable care in selecting and training employees that provide medical dental treatment to inmates;

(g.)    failing to exercise reasonable care in monitoring, investigating and processing inmate complaints and grievances regarding medical care, and

(h.)    failing to exercise reasonable care in ensuring that inmates received timely care for emergency treatment.

## DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

242.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and stared to suffer from migraines and sleeplessness.

243.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

244.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1

245.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit-M1

246.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical medical expenses in amount to be proven at trial.

247.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

248.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress

concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1

### COUNT # 7 NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**CORRECT CARE SOLUTIONS NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON PLAINTIFF.**

249.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow:

250.    Pennsylvania recognizes an independent cause of action for negligent infliction of emotional distress. (NIED). See, Toney V. Chester County Hosp., 36 A.3d 94-95 (Pa.2011) (Holding, "we consider the standard elements of negligent claims: duty, breach, causation and damages.") Toney, @ 95.

### DUTY

251.    Plaintiff is a prisoner within the care, custody and control of the defendants. As such, the defendants has an affirmative duty to care for the plaintiff's medical and mental well-being. See, Hunt V. Pa.DOC., 698 A.2d 147, 150 (Cmwlth.1997) (DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined.")

252.    Correct Care Solutions is the Contracted Health Care Services Provider @ SCI Rockview. Consequently, They owed plaintiff a duty to ensure that plaintiff received adequate and timely medical dental treatment.

253.    DeShaney V. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) (Holding, "when the state takes a person into its custody and hold him there against his will, the

Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

254.    Defendants owed plaintiff a duty to use ordinary care in avoiding causing emotional harm or distress to the plaintiff. Given the circumstances of the special relationship between plaintiff and the defendants, it was reasonably foreseeable that harm to the plaintiff would result from a breach of the duty owed to the plaintiff.

255.    Part of the defendants duty it to use competence, skill, care and diligence in providing medical dental treatment to the plaintiff. This includes providing timely care for medical dental emergencies and what constitutes medical emergencies under these particular circumstances. See, Murzynski V. Erie County, 2016 U.S. Dist. LEXIS 139672 (W.D.Pa.2016)


## BREACH OF DUTY:

256.    Defendants breached this duty by failing to provide plaintiff with timely dental treatment when he was suffering from dental emergencies on two different occasions.

257.    On April 16, 2019, plaintiff sent a sick call to the defendants because plaintiff had cracked a tooth which was causing pain and making it hard for plaintiff to eat. See, Exhibit-P1.

258.    Instead of seeing plaintiff immediately, the defendants refused to see plaintiff and scheduled plaintiff for treatment a month down the line in May 2019. This was done despite the defendants knowledge that it was reasonably foreseeable that plaintiff would suffer more pain and mental and emotional distress without treatment in between April 16, 2019 and May 15, 2019.

259.    On April 27, 2019, plaintiff's condition worsened when half of his cracked tooth fell off and went down his throat. Again, defendant refused to treat plaintiff immediately and instead told plaintiff to fill out another sick call slip despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

260.    On April 28, 2019, plaintiff sent another sick call to the defendants explaining that plaintiff's condition made it impossible for him to eat, that plaintiff was in pain and that plaintiff was in fear that the mental filling could come off and hurt him. See, Exhibit-P2.

261.    Despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment, defendants still refused to treat plaintiff and instead scheduled his appointment for a month later. See, Exhibit-P2.

262.    On June 27, 2019, plaintiff sent the first of several sick call slips to the defendants because plaintiff was suffering from severe pain and infection. Instead of seeing plaintiff immediately, the defendant refused to treat plaintiff and scheduled his appointment in August despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

263.    The defendants conduct of ignoring plaintiff continued all the was until January 6, 2020, despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

264.    Defendants also violated several administrative policies which were applicable to treating plaintiff's specific condition. Defendants violated DOC Policy 13.2.1 which state that plaintiff was required to have access to treatment for broken teeth, severe pain and infection 24 hours a

day 7 days a week. The policy also state if treatment was refused in the past, once treatment is requested again the inmate shall be re-prioritized according to his specific condition. See, 13.2.1 Sect. 1 A.2.a.; Sect. 4C.2.a.(3); Sect. 4C.1.(4)(b)and(c)..

265.    As a result of defendants individual and collective acts or omissions, the defendants breach their duty to protect the plaintiff from pain and suffering, mental and emotional distress resulting from their conduct where it was reasonably foreseeable that plaintiff would suffer such harm from the breach of this duty.

## DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

266.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

267.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

268.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1

269.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit

270.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical expenses in amount to be proven at trial.

271.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

272.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1

## COUNT # 8 NEGLIGENCE PER SE

**JANE DOE'S NEGLIGENT FAILURE TO TIMELY RESPOND TO THE PLAINTIFF'S SERIOUS AND EMERGENT MEDICAL DENTAL NEEDS.**

273.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

### DUTY:

274.    Jane Doe's defendants duty is well established by law. See, Allen V. Ellis, U.S. Dist. LEXIS 120202 (E.D.PA.2017) (holding, "Inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials.")

275.    See also, DeShaney V. Winnebago Cty. Dep't of Soc. Serv., 489 U.S. 189, 199-200 (1989) (holding, "when the state takes a person into its custody and holds him there against his

will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his

safety and general well-being.") Farmer V. Brennan, 511 U.S. 825, 832 (1994) (holding, "prison

officials must ensure that inmates receive adequate food clothing, shelter, and medical care...")

276.   Plaintiff is in the care, custody and control of the Pa. DOC defendants. Therefore, the

DOC defendants have a duty to provide adequate and timely medical dental care to plaintiff.

277.   Jane Doe is the on site Correct Care Solutions Supervisor @ SCI Rockview and

Consequently has a duty to plaintiff to ensure that he receives adequate and timely medical

dental treatment.

## PER SE NEGLIGENT BREACH OF DUTY:

278.   The Superior Court has held , "the concept of negligence per se establishes the elements

of duty and breach of duty where an individual violates an applicable statute, ordinance, or

regulation designed to prevent a public harm." Hranec Sheet Metal, Inc. V. Metalico, Inc., 107

A.3d 114, 126 (Pa.Super.2014) citing, Schemberg V. Smicherko, 85 A.3d 1071, 1074

(Pa.Super.2014)

279.   The Superior Court defined negligence per se as "conduct, whether of action or omission,

which may be declared and treated as negligence without any argument of proof as to the

particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or

ordinance may serve as the basis for negligence per se." Hranec Sheet Metal, id. @ 126.

280.   "In order to prove a claim based on negligence per se, the following four requirements

must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of

individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries." Hranec Sheet Metal, id. @ 126.

281.    Where the defendants negligently failed to timely provide the plaintiff with dental treatment, the defendants jointly and severally violated several regulations which include but are not limited to [1] 37 Pa. Code § 93.12.(a); [2] Pa. DOC Policy 13.1.1; [3] Pa. DOC Policy 13.2.1; and [4] SCI Rockview Policy Handbook Sect. VI.B.7.

<u>**STATUTE & POLICY REGULATIONS**</u>

<u>**PROTECTS INTEREST OF PARTICULAR GROUP**</u>

282.    37 Pa. Code § 93.12.(a) was enacted for the protection of prison inmates in the State of Pennsylvania and specifically state "every institution will establish procedures to permit inmates to have access to health care professionals, prescribed treatment for serious medical needs, appropriate nutrition, exercise and personal hygiene items."

283.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) the Pa. DOC created Policy 13.1.1 & 13.2.1 which specifically state, "every inmate shall have access to regular and specialized medical, mental health, dental services, and emergency health care services on a seven day a week, 24-hour basis." see, Policy, 13.2.1, (pg.1-1)

284.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) and DOC Policy 13.1.1 and 13.2.1, the Pa. DOC @ SCI Rockview created a medical policy established in Sect. VI.B.7. of the inmate handbook which specifically states, "Emergent dental issues such as

broken tooth, severe pain or swelling can be seen at any time by notifying the block officer. See, (Pg.14)

285.   Clearly, the above statute and policy regulations were created to protect a group of particular individuals namely Pennsylvania prison inmates as opposed to the public generally.

## STATUTE & POLICY REGULATIONS
## CLEARLY APPLY TO DEFENDANTS CONDUCT:

286.   The statute and Policy Regulation as written clearly applies to the defendants conduct because the plaintiff is an inmate in the care custody and control of the defendants PA. DOC at SCI Rockview.

287.   The statute and Policy Regulation circumscribes the defendants conduct when it comes to providing medical dental treatment to inmates in their care, custody and control.

288.   Policy statement to policy 13.1.1. state, "This policy establishes comprehensive health care management procedures by which the Department of Corrections and Contracted Health Care Provider Staff can provide professional Health care services that comply with department policies and procedures, ACA standards, and applicable laws." See, Sect. 11. "Purpose".

289.   Policy statement to 13.1.1. Sect. III Applicability states, "This policy is applicable to all staff, inmates, and Contract staff at facilities under the jurisdiction of the Department." See also, ¶¶ 282-284 supra.

290.   The cover page to 13.1.1. procedures manual state, "These standards may be exceeded, but in all cases these standards are the minimum standards that must be achieved...all procedures set forth in this manual must be met."

291.    The defendants are the Person[s] in which the statute and Policy regulation speak of. Certainly, the statute and Policy regulation apply to the defendants conduct where it is stated on the face of the statute and policy regulation itself.

## DEFENDANTS VIOLATED THE STATUTE & POLICY REGULATIONS:

292.    Defendants violated Policy 13.2.1. Sect. 1.A.2.a. and SCI Rockview Supplemental Handbook Policy Sect. VI.B.7. by not providing plaintiff with same day or next day emergency treatment for his emergency dental needs.

293.    Policy 13.2.1. Sect.1.A.2.a. states, every inmate shall have access to emergency dental care on a "seven day a week, 24-hour basis." See, (Pg.1-1) SCI Rockview Handbook Policy Sect. VI.B.7. states emergent dental issues "can be seen at any time." See, (Pg.14)

294.    On April 16, 2019, plaintiff sent a sick call request to medical dental department because plaintiff tooth had cracked in half and plaintiff had severe difficulties eating due to the pain and discomfort.

295.    Instead of scheduling plaintiff for same day or next day treatment, plaintiff was scheduled to see the facilities dentist in May. See, Exhibit-P1.

296.    On April 27, 2019, the plaintiff's condition worsened when half of the cracked tooth dislodged from its structure and was swallowed by plaintiff. Plaintiff informed the Block Officers who then called medical dental department at which time the medical dental department refused to allow the Block officer to send plaintiff to medical and told the officer to tell plaintiff to file a sick call slip.

297.   On April 28, 2019, the plaintiff sent another sick call slip to the medical dental department pleading for help and immediate emergency treatment due to the pain, difficulty eating and the inherent danger of the metal filling on the other half of the tooth falling off and possibly being swallowed and cutting plaintiff's throat. See, Exhibit-P2.

298.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was told he was scheduled for May. See, Exhibit-P2.

299.   On June 27, 2019, plaintiff sent a sick call to medical dental department because plaintiff was suffering from a tooth ache. Plaintiff received no response.

300.   On July 7, 2019, plaintiff sent another sick call to medical dental department because he was suffering from a tooth ache and infection which caused plaintiff to have head aches, neck pain and swollen neck.

301.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was informed that he was scheduled for an appointment in August. See, Exhibit-P4.

302.   On July 15, 2019, plaintiff sent another sick call slip to medical dental department because of severe pain, infection and neck pains. Plaintiff received no response.

303.   The defendants continued this pattern of behavior all the way until plaintiff was seen by medical staff who then forced dental to treat plaintiff on Jan. 6, 2020. See, ¶¶ 14-36.

304.   What constitutes a medical dental emergency is established by Policy 13.2.1. Sect.4 C.2.a.(3) Titled "Dental Classification of Inmate" and states in pertinent part, Dental LOC-4 Emergency Care includes "(b) relief for severe pain, (c) oral and odontogenic infections; and (d) fractures of bones and teeth." See, (pg.4-9).

305.   Additionally, Rockview Handbook Policy states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer." See, (Sect. VI.B.7., pg.14)

306.   On April 16, 2019, and April 27, 2019, plaintiff complained of a cracked, thereafter broken tooth, severe pain and discomfort. Plaintiff was not seen until May 15, 2019, despite the policy stating, "fractures of bones and teeth and severe pain" are classified as dental emergencies.

307.   On June 27, 2019, July 7, 2019, July 15, 2019, August 15, 2019, September 14, 2019, November 20, 2019, December 31, 2019, plaintiff complained of severe pain, swelling and infection inter alia. Plaintiff was not seen until January 6, 2020, despite the policy stating "oral and odontogenic infections, severe pain and swelling" are classified as dental emergencies.

308.   Where the plaintiff was not seen or treated same day or next day for a cracked and broken tooth, severe pain, swelling and infection, the defendants most certainly violated Policy 13.1.1., 13.2.1. and handbook policy Sect. VI.B.7..

309.   Indeed, Policy 13.1.1. demands "in all cases these standards must be achieved and all procedures set forth in this manual must be met." Therefore, the record reflects the defendants in fact violated the statues and Policy Regulations.

## VIOLATION OF THE STATUTE & POLICY REGULATION

## IS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF INJURY:

310.   As a direct and proximate consequence of the defendants negligent conduct in violating policy 13.1.1., 13.2.1., and Rockview Handbook Policy Sect. VI.B.7. plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

311.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

312.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks.

313.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial.

314.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expresses and will in the future incur medical expenses in an amount to be proven at trial.

315.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be regarded to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

316.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendant's negligent conduct in an amount to be proven at trial.

## COUNT # 9 NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

JANE DOE'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON PLAINTIFF.

317.   Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow:

318.   Pennsylvania recognizes an independent cause of action for negligent infliction of emotional distress. (NIED). See, Toney V. Chester County Hosp., 36 A.3d 94-95 (Pa.2011) (Holding, "we consider the standard elements of negligent claims: duty, breach, causation and damages.") Toney, @ 95.

### DUTY

319.   Plaintiff is a prisoner within the care, custody and control of the defendants. As such, the defendants has an affirmative duty to care for the plaintiff's medical and mental well-being. See, Hunt V. Pa.DOC., 698 A.2d 147, 150 (Cmwlth.1997) (DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined.")

320.   Jane Doe is the Correct Care Solutions on site supervisor @ SCI Rockview. Consequently, she owed plaintiff a duty to ensure that plaintiff received adequate and timely medical dental treatment.

321.   DeShaney V. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) (Holding, "when the state takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

322.    Defendants owed plaintiff a duty to use ordinary care in avoiding causing emotional harm or distress to the plaintiff. Given the circumstances of the special relationship between plaintiff and the defendants, it was reasonably foreseeable that harm to the plaintiff would result from a breach of the duty owed to the plaintiff.

323.    Part of the defendants duty it to use competence, skill, care and diligence in providing medical dental treatment to the plaintiff. This includes providing timely care for medical dental emergencies and what constitutes medical emergencies under these particular circumstances. See, Murzynski V. Erie County, 2016 U.S. Dist. LEXIS 139672 (W.D.Pa.2016)

**BREACH OF DUTY:**

324.    Defendants breached this duty by failing to provide plaintiff with timely dental treatment when he was suffering from dental emergencies on two different occasions.

325.    On April 16, 2019, plaintiff sent a sick call to the defendants because plaintiff had cracked a tooth which was causing pain and making it hard for plaintiff to eat. See, Exhibit-P1.

326.    Instead of seeing plaintiff immediately, the defendants refused to see plaintiff and scheduled plaintiff for treatment a month down the line in May 2019. This was done despite the defendants knowledge that it was reasonably foreseeable that plaintiff would suffer more pain and mental and emotional distress without treatment in between April 16, 2019 and May 15, 2019.

327.    On April 27, 2019, plaintiff's condition worsened when half of his cracked tooth fell off and went down his throat. Again, defendant refused to treat plaintiff immediately and instead told plaintiff to fill out another sick call slip despite the fact that it was reasonably foreseeable

that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

328.    On April 28, 2019, plaintiff sent another sick call to the defendants explaining that plaintiff's condition made it impossible for him to eat, that plaintiff was in pain and that plaintiff was in fear that the mental filling could come off and hurt him. See, Exhibit-P2.

329.    Despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment, defendants still refused to treat plaintiff and instead scheduled his appointment for a month later. See, Exhibit-P2.

330.    On June 27, 2019, plaintiff sent the first of several sick call slips to the defendants because plaintiff was suffering from severe pain and infection. Instead of seeing plaintiff immediately, the defendant refused to treat plaintiff and scheduled his appointment in August despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

331.    The defendants conduct of ignoring plaintiff continued all the was until January 6, 2020, despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

332.    Defendants also violated several administrative policies which were applicable to treating plaintiff's specific condition. Defendants violated DOC Policy 13.2.1 which state that plaintiff was required to have access to treatment for broken teeth, severe pain and infection 24 hours a day 7 days a week. The policy also state if treatment was refused in the past, once treatment is requested again the inmate shall be re-prioritized according to his specific condition. See, 13.2.1 Sect. 1 A.2.a.; Sect. 4C.2.a.(3); Sect. 4C.1.(4)(b)and(c)..

333.   As a result of defendants individual and collective acts or omissions, the defendants breach their duty to protect the plaintiff from pain and suffering, mental and emotional distress resulting from their conduct where it was reasonably foreseeable that plaintiff would suffer such harm from the breach of this duty.

## DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

334.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

335.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

336.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1.

337.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit-M1.

338.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical expenses in amount to be proven at trial.

339.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

340.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1.

## COUNT # 10 § 1983, 8th AMENDMENT VIOLATION

## JANE DOE'S DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL DENTAL NEEDS.

341.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

342.    An Eighth Amendment deliberate indifference claim requires a prisoner to show that he had a serious medical need and that the defendants failed to reasonably respond to it either by denying access to treatment or by delaying access to treatment. Estelle V. Gamble, 429 U.S. 97 (1976)

343.    Regarding unreasonably delayed treatment, courts have held if pain and suffering are unnecessarily prolonged then the deliberate indifference standard is met. Kikumura V. Osagie, 161 F.3d 1269 (10th Cir.2006).

## PLAINTIFF HAD A SERIOUS MEDICAL DENTAL NEED:

### The First Incident:

344.   On April 16, 2019, plaintiff suffered a cracked tooth and was experiencing pain, discomfort and difficulty eating as a result of his injury. See, ¶¶ 14-36.

345.   On April 27, 2019, plaintiff conditioned worsened when half of the cracked tooth broke off and went down plaintiff's throat. As a result, plaintiff experienced more pain, discomfort and eating was virtually impossible. See, ¶¶ 14-36.

### The Second Incident:

346.   On June 27, 2019, plaintiff was suffering from a tooth ache which substantially effected plaintiff's mobility in his everyday activities.

347.   On July 7, 2019, plaintiff's condition worsened and on top of the severe tooth ache, plaintiff began to suffer from head ache and neck pains resulting from tooth ache.

348.   On July 15, 2019, plaintiff's condition deteriorated even more and plaintiff was suffering from severe tooth ache, head aches, neck pain and infection.

349.   By December, 31, 2019, plaintiff's condition made another turn for the worse and plaintiff was now suffering from severe pain, tooth ache, head ache, neck pains, swollen neck and infection. See, ¶¶ 14-36.

350.   On both occasions plaintiff's condition was a medical dental emergency requiring immediate treatment as defined by DOC Policy, Medical Journals and case law.

**DOC POLICY SUPPORT:**

351.    Policy 13.2.1. Sect. 1.A.2.a.., states, ""Every inmate shall have access to.. dental services and emergency health care services on a seven day a week, 24 hour basis." (See, (Pg.1-1) Exhibit-PD1.

352.    Policy 13.2.1, has classification protocol for dental treatment which separates the levels of care into four different categories ranging for level 4 being the most serious to level 1 being the least serious. See, 13.2.1., Glossary of Terms. (Pg.xiii)

353.    Policy 13.2.1. clearly defines and identify what dental conditions fit into each category. The classifications are (A) Dental LOC-4-Emergency Care; (B) Dental LOC-3-Urgent Care; (c) Dental LOC-2-Non Emergency Care; and (D) Dental LOC-1- Preventive Care. See, Policy 13.2.1. Sect.4.2. (Pg.4-9 to 4-11).

354.    Policy 13.2.1. Sect.4.C.2.a.(3)(b)(c)(d) classify "Severe pain, oral and odontogenic infections, and fractures of bones and teeth" as Dental LOC-4 emergencies. See, (Pg.4-9)

355.    SCI Rockview Institutional Policy states "Emergent dental issues such as broken teeth, severe pain or swelling can be seen at any time." See, Rockview Inmate Handbook Sect.VI.B.7 (Pg.14)

**MEDICAL JOURNAL MERCK MANUAL SUPPORT:**

356.    In the Merck Manual, the Section titled "Dental Emergencies" It classifies "Fractured and Avulsed teeth" Tooth ache and Infection" as a medical Emergency requiring immediate care. See, (Merck Manual, Sect.5 Chapt.58, Pg.524-527)

## CASE LAW SUPPORT:

357.    Numerous decided cases establish that a broken tooth, tooth ache, swelling and infection constitutes a serious medical need.

358.    See, e.g., Goodnow V. Palm, 264 F.Supp.2d 125, 132-133 (D.Vt.2003) (Painful broken tooth was a serious need.); Brownlee V. Conine, 957 F.2d 353, 354 (7th Cir.1992) (claim of denial of dental care for a painful condition was not frivolous.); Williamson V. Brewingtoncarr, 173 F.Supp. 2D 235, 239 (D.Del.2001) (Infected tooth was a serious need.); Wall v. Dion, 257 F.Supp. 2D 316, 319 (D.Me.2003)(Same); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997) (same); Ramos V. O'Connell, 28 F.Supp. 2D 796, 803-804 (W.D.Ny. 1998) (Same) Fields V. Gander, 734 F.2d 1313, 1315 (8th Cir.1984) (Same).

359.    Based upon all the above, it is beyond dispute that the plaintiff's broken tooth, severe pain, swollen neck, head aches and infection was a serious medical need.

## JANE DOE HAD KNOWLEDGE OF PLAINTIFF'S SERIOUS MEDICAL DENTAL NEED:

360.    Defendant Jane Doe is the Correct Care Solutions supervisor at SCI Rockview and is Responsible for overseeing all medical departments including dental and is also responsible for ensuring emergency treatment inter alia.

361.    DOC POLICY 13.2.1 Sect.4.H., specifically place responsibility on defendant Jane Doe to make herself aware of the activities of the dental department and is responsible for reviewing and approving a "Monthly Dental Activity Report" and a "Monthly Backlog Report." See, (Pg.4-28 to 4-29)

362.    Policy 13.2.1. Specifically state that "the purpose of the Backlog Report is to track the numbers of inmates waiting for various kinds of dental services and the length of time that they have been waiting." See, (Pg.4-29)

363.    Additionally, plaintiff sent defendant Jane Doe (Former Michelle Fisher) a request slip explaining to her all the problems plaintiff was having and specifically requested his help. See, Exhibit-P9.

364.    Therefore, based upon all the above, defendant Jane Doe had knowledge of the plaintiff's serious medical dental needs.


## DEFENDANT JANE DOE FAILED TO REASONABLY AND TIMELY RESPOND

365.    The first incident begun on April 16, 2019, the defendants failed to schedule the plaintiff for treatment all the way until May 15, 2019, even though the defendant knew that plaintiff was in pain and suffering.

366.    The second incident begun in June 2019, and the defendants (according to them) did not schedule the plaintiff until August 2019, but never called the plaintiff for treatment until January 6, 2020, even though the defendant knew that plaintiff was in pain and suffering.

367.    The Defendants prescribed the plaintiff pain medication for the exact problem plaintiff was being treated for each time he was able to obtain an appointment which shows that the defendant knew and acknowledged plaintiff was in pain and suffering. See, Cooper V. Casey, 97 F.3d 914, 916-917 (7th Cir.1996) (finding doctors prescription of pain medication verified and proved the prisoner was in pain.)

368.    DOC Policy 13.2.1. demands same day treatment for plaintiff's dental issues and this was not followed. Rockview's Institutional policy demanded same day treatment for plaintiff's dental issues and this too was not followed. The medical journal the Merck Manual suggest same day treatment for the plaintiff's dental issues and this was also not followed.

369.    Additionally, the defendants admitted to plaintiff in his last grievance response that the defendants did not respond in a timely manner and that their response time needs to be improved. See, Exhibit-P12C.

370.    Besides the violation of DOC Policy and Medial Literature, there are several case law that establish the defendant delay in treating the plaintiff was unreasonable and harsh.

371. See, e.g., Fambro V. Fulton County, Ga., 713 F.Supp. 1426, 1429-1431 (N.D.Ga.1989) (Three week delay in dental care unreasonable); Fields V. Gander, 734 F.2d 1313, 1315)8th Cir.1984)(Three week delay in providing treatment unreasonable); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997)(Three month delay in providing dental treatment unreasonable); Goodnow V. Palm, 264 F.3d 125, 130-134 (D.Vt.2003)(Seven month delay in providing dental treatment unreasonable.); Scicluna V. Wells, 345 F.3d 441, 446 (6th Cir.2003) (Three week delay in examining prisoner unreasonable.)

372.    In Oke V. Garman, 2019 U.S. Dist. LEXIS 30440 (M.D.Pa. Feb.25, 2019) the defendants in the instant case did the exact same thing to Oke. In that case, Oke had sent several sick call slips to see dental because he was in severe pain due to a "rotten" wisdom tooth that had "cracked" had a "big hole" and was "black." Id.

373.    The Rockview medical defendant ignored Oke's sick call request for six weeks up until the dental department was forced to treat Oke upon the demands of C/O's. The U.S. District

68

court held that Oke "sufficiently pleaded an Eighth Amendment claim" against the Health Care Administrator Ellers, a nurse and both of SCI Rockview's dentist Italia and Tajeda.

374.    Based upon all the above, plaintiff respectfully avers that he has sufficiently plead an Eighth Amendment claim against the defendant.

### COUNT # 9 NEGLIGENCE PER SE

### DR. FERNANDO TEJEDA'S NEGLIGENT FAILURE TO TIMELY RESPOND TO THE PLAINTIFF'S SERIOUS AND EMERGENT MEDICAL DENTAL NEEDS.

375.    Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

### DUTY:

376.    Dr. Fernando Tejeda's defendants duty is well established by law. See, Allen V. Ellis, U.S. Dist. LEXIS 120202 (E.D.PA.2017) (holding, "Inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials.")

377.    See also, DeShaney V. Winnebago Cty. Dep't of Soc. Serv., 489 U.S. 189, 199-200 (1989) (holding, "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") Farmer V. Brennan, 511 U.S. 825, 832 (1994) (holding, "prison officials must ensure that inmates receive adequate food clothing, shelter, and medical care...")

378.    Plaintiff is in the care, custody and control of the Pa. DOC defendants. Therefore, the DOC defendants have a duty to provide adequate and timely medical dental care to plaintiff.

379.   Dr. Fernando Tejeda is the on site Correct Care Solutions Dentist @ SCI Rockview and Consequently has a duty to plaintiff to ensure that he receives adequate and timely medical dental treatment.

## PER SE NEGLIGENT BREACH OF DUTY:

380.   The Superior Court has held, "the concept of negligence per se establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." Hranec Sheet Metal, Inc. V. Metalico, Inc., 107 A.3d 114, 126 (Pa.Super.2014) citing, Schemberg V. Smicherko, 85 A.3d 1071, 1074 (Pa.Super.2014)

381.   The Superior Court defined negligence per se as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence per se." Hranec Sheet Metal, id. @ 126.

382.   "In order to prove a claim based on negligence per se, the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries." Hranec Sheet Metal, id. @ 126.

383.    Where the defendants negligently failed to timely provide the plaintiff with dental treatment, the defendants jointly and severally violated several regulations which include but are not limited to **[1]** 37 Pa. Code § 93.12.(a); **[2]** Pa. DOC Policy 13.1.1; **[3]** Pa. DOC Policy 13.2.1; and **[4]** SCI Rockview Policy Handbook Sect. VI.B.7.

## STATUTE & POLICY REGULATIONS

## PROTECTS INTEREST OF PARTICULAR GROUP

384.    37 Pa. Code § 93.12.(a) was enacted for the protection of prison inmates in the State of Pennsylvania and specifically state "every institution will establish procedures to permit inmates to have access to health care professionals, prescribed treatment for serious medical needs, appropriate nutrition, exercise and personal hygiene items."

385.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) the Pa. DOC created Policy 13.1.1 & 13.2.1 which specifically state, "every inmate shall have access to regular and specialized medical, mental health, dental services, and emergency health care services on a seven day a week, 24-hour basis." see, Policy, 13.2.1, (pg.1-1)

386.    Pursuant to the legislative directive set forth in 37 Pa. Code § 93.12.(a) and DOC Policy 13.1.1 and 13.2.1, the Pa. DOC @ SCI Rockview created a medical policy established in Sect. VI.B.7. of the inmate handbook which specifically states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer. See, (Pg.14)

387.    Clearly, the above statute and policy regulations were created to protect a group of particular individuals namely Pennsylvania prison inmates as opposed to the public generally.

## STATUTE & POLICY REGULATIONS

## CLEARLY APPLY TO DEFENDANTS CONDUCT:

388.   The statute and Policy Regulation as written clearly applies to the defendants conduct because the plaintiff is an inmate in the care custody and control of the defendants PA. DOC at SCI Rockview.

389.   The statute and Policy Regulation circumscribes the defendants conduct when it comes to providing medical dental treatment to inmates in their care, custody and control.

390.   Policy statement to policy 13.1.1. state, "This policy establishes comprehensive health care management procedures by which the Department of Corrections and Contracted Health Care Provider Staff can provide professional Health care services that comply with department policies and procedures, ACA standards, and applicable laws." See, Sect. 11. "Purpose".

391.   Policy statement to 13.1.1. Sect. III Applicability states, "This policy is applicable to all staff, inmates, and Contract staff at facilities under the jurisdiction of the Department." See also, ¶¶ 384-386 supra.

392.   The cover page to 13.1.1. procedures manual state, "These standards may be exceeded, but in all cases these standards are the minimum standards that must be achieved...all procedures set forth in this manual must be met."

393.   The defendants are the Person[s] in which the statute and Policy regulation speak of. Certainly, the statute and Policy regulation apply to the defendants conduct where it is stated on the face of the statute and policy regulation itself.

## DEFENDANTS VIOLATED THE STATUTE & POLICY REGULATIONS:

394.    Defendants violated Policy 13.2.1. Sect. 1.A.2.a. and SCI Rockview Supplemental Handbook Policy Sect. VI.B.7. by not providing plaintiff with same day or next day emergency treatment for his emergency dental needs.

395.    Policy 13.2.1. Sect.1.A.2.a. states, every inmate shall have access to emergency dental care on a "seven day a week, 24-hour basis." See, (Pg.1-1) SCI Rockview Handbook Policy Sect. VI.B.7. states emergent dental issues "can be seen at any time." See, (Pg.14)

396.    On April 16, 2019, plaintiff sent a sick call request to medical dental department because plaintiff tooth had cracked in half and plaintiff had severe difficulties eating due to the pain and discomfort.

397.    Instead of scheduling plaintiff for same day or next day treatment, plaintiff was scheduled to see the facilities dentist in May. See, Exhibit-P1.

398.    On April 27, 2019, the plaintiff's condition worsened when half of the cracked tooth dislodged from its structure and was swallowed by plaintiff. Plaintiff informed the Block Officers who then called medical dental department at which time the medical dental department refused to allow the Block officer to send plaintiff to medical and told the officer to tell plaintiff to file a sick call slip.

399.    On April 28, 2019, the plaintiff sent another sick call slip to the medical dental department pleading for help and immediate emergency treatment due to the pain, difficulty eating and the inherent danger of the metal filling on the other half of the tooth falling off and possibly being swallowed and cutting plaintiff's throat. See, Exhibit-P2.

400.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was told he was scheduled for May. See, Exhibit-P2.

401.   On June 27, 2019, plaintiff sent a sick call to medical dental department because plaintiff was suffering from a tooth ache. Plaintiff received no response.

402.   On July 7, 2019, plaintiff sent another sick call to medical dental department because he was suffering from a tooth ache and infection which caused plaintiff to have head aches, neck pain and swollen neck.

403.   Instead of scheduling plaintiff for same day or next day treatment, plaintiff was informed that he was scheduled for an appointment in August. See, Exhibit-P4.

404.   On July 15, 2019, plaintiff sent another sick call slip to medical dental department because of severe pain, infection and neck pains. Plaintiff received no response.

405.   The defendants continued this pattern of behavior all the way until plaintiff was seen by medical staff who then forced dental to treat plaintiff on Jan. 6, 2020. See, ¶¶ 14-36.

406.   What constitutes a medical dental emergency is established by Policy 13.2.1. Sect.4 C.2.a.(3) Titled "Dental Classification of Inmate" and states in pertinent part, Dental LOC-4 Emergency Care includes "(b) relief for severe pain, (c) oral and odontogenic infections; and (d) fractures of bones and teeth." See, (pg.4-9).

407.   Additionally, Rockview Handbook Policy states, "Emergent dental issues such as broken tooth, severe pain or swelling can be seen at any time by notifying the block officer." See, (Sect. VI.B.7., pg.14)

408.   On April 16, 2019, and April 27, 2019, plaintiff complained of a cracked, thereafter broken tooth, severe pain and discomfort. Plaintiff was not seen until May 15, 2019, despite the

policy stating, "fractures of bones and teeth and severe pain" are classified as dental emergencies.

409.    On June 27, 2019, July 7, 2019, July 15, 2019, August 15, 2019, September 14, 2019, November 20, 2019, December 31, 2019, plaintiff complained of severe pain, swelling and infection inter alia. Plaintiff was not seen until January 6, 2020, despite the policy stating "oral and odontogenic infections, severe pain and swelling" are classified as dental emergencies.

410.    Where the plaintiff was not seen or treated same day or next day for a cracked and broken tooth, severe pain, swelling and infection, the defendants most certainly violated Policy 13.1.1., 13.2.1. and handbook policy Sect. VI.B.7..

411.    Indeed, Policy 13.1.1. demands "in all cases these standards must be achieved and all procedures set forth in this manual must be met." Therefore, the record reflects the defendants in fact violated the statues and Policy Regulations.

## VIOLATION OF THE STATUTE & POLICY REGULATION

## IS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF INJURY:

412.    As a direct and proximate consequence of the defendants negligent conduct in violating policy 13.1.1., 13.2.1., and Rockview Handbook Policy Sect. VI.B.7. plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

413.    As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

414.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks.

415.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial.

416.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expresses and will in the future incur medical expenses in an amount to be proven at trial.

417.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be regarded to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

418.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendant's negligent conduct in an amount to be proven at trial.

**COUNT # 10 NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**DR. FERNANDO TEJEDA'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON PLAINTIFF.**

419.   Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow:

420.   Pennsylvania recognizes an independent cause of action for negligent infliction of emotional distress. (NIED). See, Toney V. Chester County Hosp., 36 A.3d 94-95 (Pa.2011) (Holding, "we consider the standard elements of negligent claims: duty, breach, causation and damages.") Toney, @ 95.

### DUTY

421.   Plaintiff is a prisoner within the care, custody and control of the defendants. As such, the defendants has an affirmative duty to care for the plaintiff's medical and mental well-being. See, Hunt V. Pa.DOC., 698 A.2d 147, 150 (Cmwlth.1997) (DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined.")

422.   Dr. Fernando Tejeda is the Correct Care Solutions on site Dentist @ SCI Rockview. Consequently, he owed plaintiff a duty to ensure that plaintiff received adequate and timely medical dental treatment.

423.   DeShaney V. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) (Holding, "when the state takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

424.   Defendants owed plaintiff a duty to use ordinary care in avoiding causing emotional harm or distress to the plaintiff. Given the circumstances of the special relationship between plaintiff and the defendants, it was reasonably foreseeable that harm to the plaintiff would result from a breach of the duty owed to the plaintiff.

425.   Part of the defendants duty it to use competence, skill, care and diligence in providing medical dental treatment to the plaintiff. This includes providing timely care for medical dental emergencies and what constitutes medical emergencies under these particular circumstances.

## BREACH OF DUTY:

426.   Defendants breached this duty by failing to provide plaintiff with timely dental treatment when he was suffering from dental emergencies on two different occasions.

427.   On April 16, 2019, plaintiff sent a sick call to the defendants because plaintiff had cracked a tooth which was causing pain and making it hard for plaintiff to eat. See, Exhibit-P1.

428.   Instead of seeing plaintiff immediately, the defendants refused to see plaintiff and scheduled plaintiff for treatment a month down the line in May 2019. This was done despite the defendants knowledge that it was reasonably foreseeable that plaintiff would suffer more pain and mental and emotional distress without treatment in between April 16, 2019 and May 15, 2019.

429.   On April 27, 2019, plaintiff's condition worsened when half of his cracked tooth fell off and went down his throat. Again, defendant refused to treat plaintiff immediately and instead told plaintiff to fill out another sick call slip despite the fact that it was reasonably foreseeable

that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

430.    On April 28, 2019, plaintiff sent another sick call to the defendants explaining that plaintiff's condition made it impossible for him to eat, that plaintiff was in pain and that plaintiff was in fear that the mental filling could come off and hurt him. See, Exhibit-P2.

431.    Despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment, defendants still refused to treat plaintiff and instead scheduled his appointment for a month later. See, Exhibit-P2.

432.    On June 27, 2019, plaintiff sent the first of several sick call slips to the defendants because plaintiff was suffering from severe pain and infection. Instead of seeing plaintiff immediately, the defendant refused to treat plaintiff and scheduled his appointment in August despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

433.    The defendants conduct of ignoring plaintiff continued all the was until January 6, 2020, despite the fact that it was reasonably foreseeable that plaintiff would suffer more pain, damage and mental and emotional distress without immediate treatment.

434.    Defendants also violated several administrative policies which were applicable to treating plaintiff's specific condition. Defendants violated DOC Policy 13.2.1 which state that plaintiff was required to have access to treatment for broken teeth, severe pain and infection 24 hours a day 7 days a week. The policy also state if treatment was refused in the past, once treatment is requested again the inmate shall be re-prioritized according to his specific condition. See, 13.2.1 Sect. 1 A.2.a.; Sect. 4C.2.a.(3); Sect. 4C.1.(4)(b)and(c)..

435.   As a result of defendants individual and collective acts or omissions, the defendants breach their duty to protect the plaintiff from pain and suffering, mental and emotional distress resulting from their conduct where it was reasonably foreseeable that plaintiff would suffer such harm from the breach of this duty.

## DIRECT AND PROXIMATE CAUSE OF INJURY SUFFERED:

436.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff became stressed, angry, depressed, had anxiety and started to suffer from migraines and sleeplessness.

437.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered severe pain from tooth ache and infection for months, head aches, neck pain and swollen neck all requiring medical treatment.

438.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered additional mental harm and emotional distress where plaintiff was placed in fear of death and had stress and anxiety and panic attacks. See, Exhibit-M1.

439.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff suffered physical injury, past, present and future pain and suffering, impairment, mental anguish, mental distress and lost capacity to enjoy life in an amount to be proven at trial. See, Exhibit-M1.

440.   As a direct and proximate consequence of the defendants negligent conduct, plaintiff has incurred medical expenses and will in the future incur medical expenses in amount to be proven at trial.

441.     As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of his life in an amount to be proven at trial.

442.     As a direct and proximate consequence of the defendants negligent conduct, plaintiff has been caused to suffer past, present and future fear, mental anguish and emotional distress concerning his present and future mental health problems associated with the defendants negligent conduct in an amount to be proven at trial. See, Exhibit-M1.

### COUNT # 11 § 1983, 8th AMENDMENT VIOLATION

### DR. FERNANDO TEJEDA'S DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL DENTAL NEEDS.

443.     Plaintiff hereby incorporates by reference all previous paragraphs of this compliant as if fully set forth at length herein and further allege as follow.

444.     An Eighth Amendment deliberate indifference claim requires a prisoner to show that he had a serious medical need and that the defendants failed to reasonably respond to it either by denying access to treatment or by delaying access to treatment. Estelle V. Gamble, 429 U.S. 97 (1976)

445.     Regarding unreasonably delayed treatment, courts have held if pain and suffering are unnecessarily prolonged then the deliberate indifference standard is met. Kikumura V. Osagie, 161 F.3d 1269 (10th Cir.2006).

## PLAINTIFF HAD A SERIOUS MEDICAL DENTAL NEED:

**The First Incident:**

446.   On April 16, 2019, plaintiff suffered a cracked tooth and was experiencing pain, discomfort and difficulty eating as a result of his injury. See, ¶¶ 14-36.

447.   On April 27, 2019, plaintiff conditioned worsened when half of the cracked tooth broke off and went down plaintiff's throat. As a result, plaintiff experienced more pain, discomfort and eating was virtually impossible. See, ¶¶ 14-36.

**The Second Incident:**

448.   On June 27, 2019, plaintiff was suffering from a tooth ache which substantially effected plaintiff's mobility in his everyday activities.

449.   On July 7, 2019, plaintiff's condition worsened and on top of the severe tooth ache, plaintiff began to suffer from head ache and neck pains resulting from tooth ache.

450.   On July 15, 2019, plaintiff's condition deteriorated even more and plaintiff was suffering from severe tooth ache, head aches, neck pain and infection.

451.   By December, 31, 2019, plaintiff's condition made another turn for the worse and plaintiff was now suffering from severe pain, tooth ache, head ache, neck pains, swollen neck and infection. See, ¶¶ 14-36.

452.   On both occasions plaintiff's condition was a medical dental emergency requiring immediate treatment as defined by DOC Policy, Medical Journals and case law.

## DOC POLICY SUPPORT:

453. Policy 13.2.1. Sect. 1.A.2.a.., states, ""Every inmate shall have access to.. dental services and emergency health care services on a seven day a week, 24 hour basis." (See, (Pg.1-1) Exhibit-PD1.

454. Policy 13.2.1, has classification protocol for dental treatment which separates the levels of care into four different categories ranging for level 4 being the most serious to level 1 being the least serious. See, 13.2.1., Glossary of Terms. (Pg.xiii)

455. Policy 13.2.1. clearly defines and identify what dental conditions fit into each category. The classifications are (A) Dental LOC-4-Emergency Care; (B) Dental LOC-3-Urgent Care; (c) Dental LOC-2-Non Emergency Care; and (D) Dental LOC-1- Preventive Care. See, Policy 13.2.1. Sect.4.2. (Pg.4-9 to 4-11).

456. Policy 13.2.1. Sect.4.C.2.a.(3)(b)(c)(d) classify "Severe pain, oral and odontogenic infections, and fractures of bones and teeth" as Dental LOC-4 emergencies. See, (Pg.4-9)

457. SCI Rockview Institutional Policy states "Emergent dental issues such as broken teeth, severe pain or swelling can be seen at any time." See, Rockview Inmate Handbook Sect.VI.B.7 (Pg.14)

## MEDICAL JOURNAL MERCK MANUAL SUPPORT:

458. In the Merck Manual, the Section titled "Dental Emergencies" It classifies "Fractured and Avulsed teeth" Tooth ache and Infection" as a medical Emergency requiring immediate care. See, (Merck Manual, Sect.5 Chapt.58, Pg.524-527)

**CASE LAW SUPPORT:**

459.    Numerous decided cases establish that a broken tooth, tooth ache, swelling and infection constitutes a serious medical need.

460.    See, e.g., Goodnow V. Palm, 264 F.Supp.2d 125, 132-133 (D.Vt.2003) (Painful broken tooth was a serious need.); Brownlee V. Conine, 957 F.2d 353, 354 (7th Cir.1992) (claim of denial of dental care for a painful condition was not frivolous.); Williamson V. Brewingtoncarr, 173 F.Supp. 2D 235, 239 (D.Del.2001) (Infected tooth was a serious need.); Wall v. Dion, 257 F.Supp. 2D 316, 319 (D.Me.2003)(Same); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997) (same); Ramos V. O'Connell, 28 F.Supp. 2D 796, 803-804 (W.D.Ny. 1998) (Same) Fields V. Gander, 734 F.2d 1313, 1315 (8th Cir.1984) (Same).

461.    Based upon all the above, it is beyond dispute that the plaintiff's broken tooth, severe pain, swollen neck, head aches and infection was a serious medical need.

**DR. FERNANDO TEJEDA HAD KNOWLEDGE OF PLAINTIFF'S SERIOUS MEDICAL DENTAL NEED:**

462.    Defendant Dr. Fernando Tejeda is the Correct Care Solutions Dentist at SCI Rockview and is Responsible for delivering dental treatment to inmates and is also responsible for ensuring emergency treatment inter alia.

463.    Additionally, Defendant is responsible for scheduling treatment for all inmates and has a duty to review inmate request for treatment. See, Exhibit-P12c.

464.    Therefore, based upon all the above, defendant Dr. Fernando Tejeda had knowledge of the plaintiff's serious medical dental needs.

## DEFENDANT DR. FERNANDO TEJEDA FAILED TO REASONABLY AND TIMELY RESPOND

465.    The first incident begun on April 16, 2019, the defendants failed to schedule the plaintiff for treatment all the way until May 15, 2019, even though the defendant knew that plaintiff was in pain and suffering.

466.    The second incident begun in June 2019, and the defendants (according to them) did not schedule the plaintiff until August 2019, but never called the plaintiff for treatment until January 6, 2020, even though the defendant knew that plaintiff was in pain and suffering.

467.    The Defendants prescribed the plaintiff pain medication for the exact problem plaintiff was being treated for each time he was able to obtain an appointment which shows that the defendant knew and acknowledged plaintiff was in pain and suffering. See, Cooper V. Casey, 97 F.3d 914, 916-917 (7th Cir.1996) (finding doctors prescription of pain medication verified and proved the prisoner was in pain.)

468.    DOC Policy 13.2.1. demands same day treatment for plaintiff's dental issues and this was not followed. Rockview's Institutional policy demanded same day treatment for plaintiff's dental issues and this too was not followed. The medical journal the Merck Manual suggest same day treatment for the plaintiff's dental issues and this was also not followed.

469.   Additionally, the defendants admitted to plaintiff in his last grievance response that the defendants did not respond in a timely manner and that their response time needs to be improved. See, Exhibit-P12C.

470.   Besides the violation of DOC Policy and Medial Literature, there are several case law that establish the defendant delay in treating the plaintiff was unreasonable and harsh.

471.   See, e.g., Fambro V. Fulton County, Ga., 713 F.Supp. 1426, 1429-1431 (N.D.Ga.1989) (Three week delay in dental care unreasonable); Fields V. Gander, 734 F.2d 1313, 1315)8th Cir.1984)(Three week delay in providing treatment unreasonable); Moore V. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir.1997)(Three month delay in providing dental treatment unreasonable); Goodnow V. Palm, 264 F.3d 125, 130-134 (D.Vt.2003)(Seven month delay in providing dental treatment unreasonable.); Scicluna V. Wells, 345 F.3d 441, 446 (6th Cir.2003) (Three week delay in examining prisoner unreasonable.)

472.   In Oke V. Garman, 2019 U.S. Dist. LEXIS 30440 (M.D.Pa. Feb.25, 2019) the defendants in the instant case did the exact same thing to Oke. In that case, Oke had sent several sick call slips to see dental because he was in severe pain due to a "rotten" wisdom tooth that had "cracked" had a "big hole" and was "black." Id.

473.   The Rockview medical defendant ignored Oke's sick call request for six weeks up until the dental department was forced to treat Oke upon the demands of C/O's. The U.S. District court held that Oke "sufficiently pleaded an Eighth Amendment claim" against the Health Care Administrator Ellers, a nurse and both of SCI Rockview's dentist Italia and Tajeda.

474.   Based upon all the above, plaintiff respectfully avers that he has sufficiently plead an Eighth Amendment claim against the defendant.

## COUNT 12

## PLAINTIFF'S DAMAGES AND REQUESTED RELIEF

475.   Plaintiff hereby incorporates by reference all of the preceding paragraphs as if they were fully set forth herein.

476.   As a result of the individual, combined and concurring acts and omissions of the defendants as set forth herein above, each above-named defendant caused or contributed to cause the following injuries in excess of two-hundred and fifty thousand dollars ($250,000) by the following injuries to Plaintiff:

a.)   Plaintiff has been caused to suffer physical injury, past, present and future pain and suffering, disability, impairment, lost capacity to enjoy life, loss of earning capacity, mental anguish and emotional distress in an amount to be proven at trial.

b.)   Plaintiff has been caused to incur medical expenses and will in the future incur medical expenses in an amount to be proven at trial.

c.)   Plaintiff has been caused to undergo medical treatment and monitoring and will be required to undergo medical treatment and monitoring for the rest of Plaintiff's life in an amount to be proven at trial.

d.) Plaintiff has been caused to suffer past, present, and future fear, mental anguish, and emotional distress concerning his present and future medical and mental health problems associated with the defendant's negligent conduct and deliberate indifference.

## DAMAGES AGAINST D.O.C. DEFENDANTS

477.   42 Pa.C.S.A § 8528 limits the amount of damages recoverable from the D.O.C. defendants at $250,000. Where the amount of damages caused by the D.O.C. defendants exceeds the statutory limit, plaintiff hereby seeks an award in the amount of the statutory limit of $250,000 against the D.O.C. defendants for:

a.)    Pain and suffering

b.)    Loss of earning capacity

c.)    Medical expenses

d.)    Mental Anguish / Emotional Distress

e.)    Cost of litigation

Compensatory, General, Actual and Nominal damages

f.)    Delay damages if and when they become applicable.

## DAMAGES AGAINST CORRECT CARE SOULUTIONS ET AL.

478.   Plaintiff hereby seeks an award against the Correct Care Solution defendants in the amount of $50,000 for the following:

a.)    Pain and suffering

b.)    Loss of earning capacity

c.)    Medical expenses

d.)    Mental Anguish / Emotional Distress

e.)    Cost of litigation

Compensatory, General, Actual and Nominal damages

f.)    Delay damages if and when they become applicable.

## DAMAGES AGAINST DR. RICHARD ELLERS

479.    Plaintiff hereby seeks an award against the Dr. Richard Ellers defendants in an amount of

$50,000 for the following:

a.)     Pain and suffering

b.)     Loss of earning capacity

c.)     Medical expenses

d.)     Mental Anguish / Emotional Distress

e.)     Cost of litigation

Compensatory, General, Actual and Nominal damages

f.)     Delay damages if and when they become applicable.


## PUNITIVE DAMAGES AGAINST DR. RICHARD ELLERS

480.    The conduct of the Dr. Richard Ellers, as set forth herein above was reckless, evidencing

such an entire want of care as to raise the presumption of a conscious indifference to the

consequences in that Ellers acted only out of self-interest and personal gain.

481.    Accordingly, punitive damages should be imposed against Ellers to punish and deter the

defendants from repeating or continuing such reckless conduct.

482.    The aforementioned evidence presents a clear and convincing proof that the defendants

conduct was so reckless or so grossly negligent that punitive damages are warranted. Punitive

damages must be considered because there is a reasonable showing by evidenced in the record or

proffered by the Plaintiff that would provide a reasonable basis for recovery of such damages.

483. Moreover, the Rules of Civil Procedure are liberally construed so as to allow the Plaintiff discovery of evidence, which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages.

484. The Pa. Supreme Court applies Section 908 of the restatement of Torts 2nd as its standard when considering punitive damages.

485.   Section 908, Punitive Damages, reads as follows:

1)   Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct to deter him and others like him from similar conduct in the future.

2)   Punitive damages may be awarded for conduct that is outrageous, because of the defendants evil motive or his reckless indifference to the rights of others.

486.   The evidence provided or proffered herein presents clear and convincing proof that the defendants conduct was outrageous as to show a reckless indifference to the rights of others that punitive damages are warranted.

487.   Punitive damages should be awarded for the following reasons: 1) defendant failed to exercise reasonable care in ensuring that plaintiff received emergency dental treatment thereby showing gross negligence or a reckless indifference to the rights of the plaintiff. 2) defendant failed to implement infrastructure, training and safety protocols to protect the plaintiff from being physically and emotionally injured thereby showing gross negligence or a reckless indifference to the rights of the Plaintiff and others. 3) defendants failed to follow the law and Administrative Policy and act with good faith, trust, confidence, candor, skill, prudence and

diligence thereby showing gross negligence or a reckless indifference to the rights of the government, Plaintiff and others.

488.    Therefore, defendant's acts would certainly constitute gross negligence or a reckless indifference to the rights of others justifying an award for punitive damages under Pennsylvania law.

489.    Anyone of the above aforementioned grounds, standing alone, warrants consideration of punitive damages. Considering the totality of all the aforementioned grounds together, they prove, by clear and convincing evidence, that punitive damages are appropriate and would be routinely awarded by any Jury.

490.    The defendant's conduct, as set forth above and incorporated herein, was wanton, outrageous, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that the defendants acted only out of self-interest and personal gain. Thus, punitive damages should be awarded.

### DAMAGES AGAINST JANE DOE

491.    Plaintiff hereby seeks an award against Jane Doe in an amount of $50,000 for the following:

a.)    Pain and suffering

b.)    Loss of earning capacity

c.)    Medical expenses

d.)    Mental Anguish / Emotional Distress

e.)    Cost of litigation

Compensatory, General, Actual and Nominal damages

f.)     Delay damages if and when they become applicable.

## PUNITIVE DAMAGES AGAINST JANE DOE

492.    The conduct of Jane Doe, as set forth herein above was reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that Jane Doe acted only out of self-interest and personal gain.

493.    Accordingly, punitive damages should be imposed against Jane Doe to punish and deter the defendants from repeating or continuing such reckless conduct.

494.    The aforementioned evidence presents a clear and convincing proof that the defendants conduct was so reckless or so grossly negligent that punitive damages are warranted. Punitive damages must be considered because there is a reasonable showing by evidenced in the record or proffered by the Plaintiff that would provide a reasonable basis for recovery of such damages.

495. Moreover, the Rules of Civil Procedure are liberally construed so as to allow the Plaintiff discovery of evidence, which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages.

496. The Pa. Supreme Court applies Section 908 of the restatement of Torts 2nd as its standard when considering punitive damages.

497.    Section 908, Punitive Damages, reads as follows:

1)      Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct to deter him and others like him from similar conduct in the future.

2)      Punitive damages may be awarded for conduct that is outrageous, because of the defendants evil motive or his reckless indifference to the rights of others.

498.    The evidence provided or proffered herein presents clear and convincing proof that the defendants conduct was outrageous as to show a reckless indifference to the rights of others that punitive damages are warranted.

499.    Punitive damages should be awarded for the following reasons: 1) defendant failed to exercise reasonable care in ensuring that plaintiff received emergency dental treatment thereby showing gross negligence or a reckless indifference to the rights of the plaintiff. 2) defendant failed to implement infrastructure, training and safety protocols to protect the plaintiff from being physically and emotionally injured thereby showing gross negligence or a reckless indifference to the rights of the Plaintiff and others. 3) defendants failed to follow the law and Administrative Policy and act with good faith, trust, confidence, candor, skill, prudence and diligence thereby showing gross negligence or a reckless indifference to the rights of the government, Plaintiff and others.

500.    Therefore, defendant's acts would certainly constitute gross negligence or a reckless indifference to the rights of others justifying an award for punitive damages under Pennsylvania law.

501.    Anyone of the above aforementioned grounds, standing alone, warrants consideration of punitive damages. Considering the totality of all the aforementioned grounds together, they prove, by clear and convincing evidence, that punitive damages are appropriate and would be routinely awarded by any Jury.

502.   The defendant's conduct, as set forth above and incorporated herein, was wanton, outrageous, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that the defendants acted only out of self-interest and personal gain. Thus, punitive damages should be awarded.

### DAMAGES AGAINST DR. FERNANDO TEJEDA

503.   Plaintiff hereby seeks an award against the Dr. Tejeda defendants in an amount of $50,000 for the following:

a.)     Pain and suffering

b.)     Loss of earning capacity

c.)     Medical expenses

d.)     Mental Anguish / Emotional Distress

e.)     Cost of litigation

Compensatory, General, Actual and Nominal damages

f.)     Delay damages if and when they become applicable.

### PUNITIVE DAMAGES AGAINST DR. FERNANDO TEJEDA

504.   The conduct of Dr. Tejeda, as set forth herein above was reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that Tejeda acted only out of self-interest and personal gain.

505.   Accordingly, punitive damages should be imposed against Tejeda to punish and deter the defendants from repeating or continuing such reckless conduct.

506.   The aforementioned evidence presents a clear and convincing proof that the defendants conduct was so reckless or so grossly negligent that punitive damages are warranted. Punitive damages must be considered because there is a reasonable showing by evidenced in the record or proffered by the Plaintiff that would provide a reasonable basis for recovery of such damages.

507. Moreover, the Rules of Civil Procedure are liberally construed so as to allow the Plaintiff discovery of evidence, which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages.

508. The Pa. Supreme Court applies Section 908 of the restatement of Torts 2nd as its standard when considering punitive damages.

509.   Section 908, Punitive Damages, reads as follows:

1)     Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct to deter him and others like him from similar conduct in the future.

2)     Punitive damages may be awarded for conduct that is outrageous, because of the defendants evil motive or his reckless indifference to the rights of others.

510.   The evidence provided or proffered herein presents clear and convincing proof that the defendants conduct was outrageous as to show a reckless indifference to the rights of others that punitive damages are warranted.

511.   Punitive damages should be awarded for the following reasons: 1) defendant failed to exercise reasonable care in ensuring that plaintiff received emergency dental treatment thereby showing gross negligence or a reckless indifference to the rights of the plaintiff. 2) defendant failed to implement infrastructure, training and safety protocols to protect the plaintiff from

being physically and emotionally injured thereby showing gross negligence or a reckless indifference to the rights of the Plaintiff and others. 3) defendants failed to follow the law and Administrative Policy and act with good faith, trust, confidence, candor, skill, prudence and diligence thereby showing gross negligence or a reckless indifference to the rights of the government, Plaintiff and others.

512.   Therefore, defendant's acts would certainly constitute gross negligence or a reckless indifference to the rights of others justifying an award for punitive damages under Pennsylvania law.

513.   Anyone of the above aforementioned grounds, standing alone, warrants consideration of punitive damages. Considering the totality of all the aforementioned grounds together, they prove, by clear and convincing evidence, that punitive damages are appropriate and would be routinely awarded by any Jury.

514.   The defendant's conduct, as set forth above and incorporated herein, was wanton, outrageous, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that the defendants acted only out of self-interest and personal gain. Thus, punitive damages should be awarded.

**WHEREFORE,** Plaintiff prays:

a.)   That Process issue according to law;

b.)   That each defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

c.)   That the Court enter a Judgment against each defendant, jointly and severally, for all general, nominal and compensatory damages allowable to Plaintiff;

d.)    That the Court enter a Judgment against each defendant, Jointly and severally, for all special damages allowable to Plaintiff;

e.)    That the Court enter a Judgment against Dr. Ellers serving to award Plaintiff punitive damages;

f.)    That the Court enter a Judgment against Jane Doe serving to award Plaintiff punitive damages;

g.)    That the Court enter a Judgment against Dr.Tejeda serving to award Plaintiff punitive damages;

h.)    That the Court enter a Judgment against each defendant, Jointly and severally, for all other relief sought by Plaintiff under this complaint;

i.)    That costs of this action be cast upon defendants; and

j.)    That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by Jury on all claims so triable.

_Aquil Johnson_    2-14-2021
_____
AQUIL JOHNSON, Plaintiff

IN THE COURT OF COMMON PLEAS CENTRE COUNTY
JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

AQUIL JOHNSON                            (
    Plaintiff                            (
                                   (
      V.                                 (
PA. Dept of Corrections                  (
JOHN WETZEL, Secretary, PA. D.O.C.,      (
Dr. Richard Ellers CHCA                  (
Correct Care Solutions LLC               (
Michelle Fisher CCS Supervisor
Dr. Fernando Tejeda D.D.S.               (
Defendants                               (

## VERIFICATION

The facts set forth in the foregoing are true and correct to the best of the undersigned's knowledge,

information, and belief and are verified subject to the penalties for unsworn falsification to authorities under

Pennsylvania Crimes Code 4904 (18 Pa.C.S.A. § 4904).

Date 2-14-2021

Respectfully Submitted

AQUIL JOHNSON # JS-6478
1 ROCKVIEW PLACE, BOX-A
BELLEFONTE, PA.16823-0820