**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AQUIL JOHNSON, | : | Civil No. 1:21-CV-00516 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court are Defendants' motions to dismiss the amended complaint. (Docs. 70, 74.)  Also pending before the court are Defendants' motions to strike Plaintiff's certificates of merit and Plaintiff's motion for a determination regarding the requirement of a certificate of merit.  (Docs. 89, 91, 94.)  Plaintiff Aquil Johnson ("Plaintiff") is an inmate currently housed at the State Correctional Institution Rockview in Bellefonte, Pennsylvania, ("SCI-Rockview") and is self-represented in this 42 U.S.C. § 1983 action.  Plaintiff has adequately pled an Eighth Amendment deliberate indifference claim against Defendants in the amended complaint, but he has failed to properly plead negligence per se and negligent infliction of emotional distress claims.  As such, Defendants' motions to dismiss will be granted in part and denied in part.  Furthermore, Defendants Michelle Fisher ("Fisher"), Correct Care Solutions, LLC ("CCS"), and Jorge Dominicis ("Dominicis") have, in the alternative to dismissing claims under Rule

1

12(b)(6), moved for summary judgment.  (Docs. 74, 75.)  Summary judgment will be denied as to Defendant Fisher, and will be granted as to Defendants CCS and Dominicis.  Defendants' motions to strike Plaintiff's certificates will be granted. Plaintiff's motion for a determination will be denied.

### BACKGROUND AND PROCEDURAL HISTORY

This action was initially filed in the Court of Common Pleas in Centre County, Pennsylvania and removed to federal court on March 22, 2021.  (Docs. 1, 1-2.)  The original complaint brought an Eighth Amendment deliberate indifference claim, a negligence per se claim, and an intentional infliction of emotional distress claim against the Pennsylvania Department of Corrections ("DOC"), John E. Wetzel ("Wetzel"), Mark Garman ("Garman"), Dr. Richard Ellers ("Ellers"), CCS, Fisher, and Dr. Fernando Tejeda ("Tejeda").  (Doc. 1-2.) Defendants filed motions to dismiss the complaint.  (Docs. 7, 21.)  On March 9, 2022, Magistrate Judge Martin C. Carlson entered a report and recommendation recommending that Defendants motion be granted in part and denied in part.  (Doc. 39.)  After ruling on Plaintiff's objections, Docs. 10, 41, 42, the court adopted the report and recommendation in part.  (Doc. 45.)  The only surviving claims were the Eighth Amendment claim as to Defendants Ellers, Tejada, and Fisher, the negligence per se claim as to all Defendants and the negligent infliction of

emotional distress claim as to all Defendants.  (Doc. 45.)[1]  Defendants then answered the complaint as to the surviving claims.  (Docs. 46, 48.)

In September of 2022, Plaintiff filed an amended complaint naming an additional defendant, Dominicis, the Chief Executive Officer ("CEO") of CCS. (Docs. 62, 65.)  On November 7, 2022, Defendants employed by the DOC filed a motion to dismiss the amended complaint.  (Doc. 70.)  On December 7, 2022, the Defendants employed by CCS filed a motion to dismiss the amended complaint. (Doc. 74.)  The parties have fully briefed the motions, and the motions are now ripe for the court's determination.

In the course of briefing these pending motions to dismiss, Plaintiff filed certificates of merit with a letter establishing a standard of care from Johnyae Cook, LPN on February 27, 2023.  (Doc. 88.)  In response, both sets of Defendants filed motions to strike these certificates.  (Docs. 89, 91.)  Plaintiff has responded to these motions and filed a motion asking the court to issue a determination regarding the need for certificates of merit in this case.  (Docs. 94, 97, 98.)  The court will also address these pending motions.

_____

[1] The report and recommendation did not address the negligence per se or intentional infliction of emotional distress claims on their merits, but recommended refusing to extend jurisdiction to these state law claims.  (Doc. 39.)  The court did not adopt this recommendation.  (Doc. 45.)  The court will address the merits of these claims as raised in the amended complaint at this time.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Rockview, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Facts Alleged in the Amended Complaint.

In the amended complaint, Plaintiff names eight defendants:  (1) the DOC;

(2) Wetzel, the Secretary of the DOC; (3) Garman, Superintendent of SCI-

Rockview; (4) Ellers, Corrections Health Care Administrator at SCI-Rockview; (5)

CCS, the private medical service provider for SCI-Rockview; (6) Dominicis, CEO

of CCS; (7) Fisher, CCS's Supervisor for SCI-Rockview; and (8) Tejeda, dentist at

SCI-Rockview.  (Doc. 65, pp. 1-3.)[2]

In the amended complaint, Plaintiff alleges that in March of 2019, he

presented to the medical office in SCI-Rockview to obtain dental care for an

abscessed tooth.  (Doc. 65, p. 6.)  He states that Defendant Tejeda was the

attending dentist at the time.  (*Id*.)  He alleges that he and Defendant Tejeda

decided that the best course of action was to place Plaintiff on antibiotics to treat

---

[2] For ease of reference the court utilizes the page numbers from the CM/ECF Header.

the infection. (*Id*.) He states that he was prescribed Penicillin Vee K 500 mg and 600 mg ibuprofen for the pain. (*Id*.) He alleges that on April 16, 2019, he sent a sick call to the SCI-Rockview medical dental office because his tooth on his lower right side of his mouth had cracked in half which made it hard for him to eat due to the pain and discomfort. (*Id*.) He was told he had an appointment sometime in May 2019. (*Id*.)

Plaintiff alleges that on April 27, 2019, his condition worsened, and half of the cracked tooth dislodged from its structure and went down his throat. (*Id*.) He states that he was in fear of his life and asked the block officer to call medical so he could obtain treatment. (*Id*.) Plaintiff alleges that the block officer called medical, and medical staff told the block officer to have Plaintiff fill out a sick call slip "and refused to let the block officer send plaintiff to medical for treatment." (*Id*.) Plaintiff sent in a sick call slip to the medical dental department on April 28, 2019 "pleading for help and immediate emergency treatment due to the fact that the metal filling was loose and in danger of falling off and possibly being swallowed and cutting plaintiff's throat." (*Id*.) Plaintiff alleges that the medical dental department "once again refused to see plaintiff immediately" and told him he was scheduled for an appointment in May. (*Id*., p. 7.)

Plaintiff alleges that between April 16, 2019 and May 15, 2019, he suffered from pain and discomfort resulting from the cracking and swallowing of half his

tooth and "was in fear of death due to the possibility of the other metal half coming dislodged and being swallowed." (*Id.*)

Plaintiff states that on May 15, 2019, he went to the SCI-Rockview medical dental department and Dr. Tejeda reconstructed the half of the tooth that was missing. (*Id.*)

He alleges that on June 27, 2019 , Plaintiff sent a sick call to the SCI-Rockview medical dental department because he was suffering from a toothache on the left side of his mouth. (*Id.*) He states that he received no response.

Plaintiff alleges that on July 7, 2019, he sent a sick call slip to the SCI-Rockview medical dental department because he was suffering from several problems with his teeth which "caused plaintiff to be in pain and have head aches and neck pains." (*Id.*) He states that he was told he had an appointment scheduled in August. (*Id.*)

Plaintiff alleges that on July 15, 2019, he sent a sick call slip to the SCI-Rockview medical dental department because his infection had returned and "the pain he was experiencing was to [sic] much to wait until August to be treated for." (*Id.*) He states he received no response. (*Id.*)

Plaintiff alleges that on August 15, 2019, he sent a sick call slip to the SCI-Rockview medical dental department because he was in "severe pain" and had not yet received treatment. (*Id.*) He states he received no response. (*Id.*)

Plaintiff alleges that on September 19, 2019, he sent a sick call slip to the medical dental department because he was in "severe pain and was never seen by the dentist at all." (*Id*., pp. 7–8.) He states he received no response. (*Id*., p. 8.)

Plaintiff alleges that on November 20, 2019, he sent a request slip to Defendants Ellers and Fisher because he was told a year prior that they were responsible for the entire medical dental department. (*Id*.) Plaintiff states that the request slip asked both Defendants for help with getting treated by a dentist for his severe tooth ache and ear infection. (*Id*.) He states he received no response. (*Id*.)

Plaintiff alleges that on December 31, 2019, he sent in a sick call slip to medical dental because dental would not let the block officer send him down to get treated. (*Id*.) Plaintiff states that the medical dental department did not respond, but Deputy Houser responded, stating that he forwarded Plaintiff's concerns to Defendant Ellers. (*Id*.)

Plaintiff alleges that in January of 2020, he sent a sick call slip to the physician assistant instead of the dentist because he was not receiving any responses from the dental department. (*Id*.) On January 6, 2020, he was called to the medial department by the physician assistant, who told him that dental was backed up. (*Id*.) Plaintiff alleges that Physician Assistant Matthew Riley went to the dental office and informed them that Plaintiff "was in serious need of dental

treatment" and the dental department agreed to see him, and he was placed back on antibiotics and pain killers.  (*Id*.)

Plaintiff alleges that his infection returned in March of 2020, the problematic tooth was removed, and he was placed back on antibiotics and pain killers.  (*Id*., p. 9.)

Plaintiff alleges that he filed a grievance regarding the delay in dental treatment which was denied stating that Plaintiff failed to show up for his August of 2019 appointment.  (*Id*.)  He alleges it is not possible to fail to appear to any medical or dental appointment because policy requires Plaintiff to be locked in his cell until the time of his appointment.  (*Id*.)

In the complaint, Plaintiff enumerates sixteen claims: (1) negligence per se against Defendants DOC, Wetzel, and Garman; (2) negligent infliction of emotional distress against Defendants DOC, Wetzel, and Garman; (3) negligence per se against Defendant Ellers; (4) negligent infliction of emotional distress against Defendant Ellers; (5) Eighth Amendment violation against Defendant Ellers; (6) Eighth Amendment deliberate indifference custom claim against Defendant CCS; (7) negligent infliction of emotional distress against CCS; (8) negligence per se against Defendant Fisher; (9) negligence infliction of emotional distress against Defendant Fisher; (10) Eighth Amendment deliberate indifference claim against Defendant Fisher; (11) negligence per se against Defendant Tejeda;

(12)  negligent infliction of emotional distress against Defendant Tejeda; (13)

Eighth Amendment deliberate indifference claim against Defendant Tejeda; (14)

Eighth Amendment deliberate indifference custom claim against Defendant

Dominicis; (15) negligence per se against Defendant Dominicis; and (16) negligent

infliction of emotional distress against Defendant Dominicis.  (Doc. 65, pp. 10-73.)

## B. Defendants' Motion To Dismiss the Eighth Amendment Claims Will Denied.

Plaintiff raises Eighth Amendment deliberate indifference claims against

Defendants Ellers, Tejeda, CCS, Fisher, and Dominicis.  (Doc. 65.)

Prison officials violate the Eighth Amendment when they act with deliberate

indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S.

97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment

for inadequate medical treatment, a plaintiff must make (1) an objective showing

that his medical needs were serious, and (2) a subjective showing that the

defendants were deliberately indifferent to those medical needs.  *See Pearson v.*

*Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is

"one that has been diagnosed by a physician as requiring treatment or is so obvious

that a lay person would easily recognize the necessity for a doctor's attention."

*Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir.

1987) (citation omitted).  A prison official is deliberately indifferent when he or

11

she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

### 1. Defendants Ellers, Tejeda, and Fisher

Defendants Ellers and Tejeda do not seek dismissal of the Eighth Amendment claim at this time. (Doc. 72.) Likewise, Defendant Fisher does not seek dismissal of the Eighth Amendment claim at this time. (Doc. 75.)

### 2. Defendant CCS

Plaintiff raises an Eighth Amendment deliberate indifference claim against Defendant CCS.  (Doc. 65.)  An Eighth Amendment claim against CCS was not alleged in the original complaint.  (Doc. 1-2.)  Therefore, this is the first time the court is addressing this claim.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).  The Supreme Court has held that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

There are three scenarios under which Defendant CCS could be liable under § 1983. "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of the policy." *Natale*, 318 F.3d at 584 (internal citation and quotation marks omitted). "The second occurs where no rule has been announced as a policy but federal law has been violated by an act of the policymaker itself." *Id.* "Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in a violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to that need." *Id.*

Plaintiff's complaint focuses on the third of these scenarios, a policy or custom exists where the policy maker has failed to act affirmatively. (Doc. 65.) Plaintiff alleges that CCS "established a wide spread custom of [u]nconstitutionally delaying emergency medical dental care" by failing to adequately supervise its personnel; failing to monitor its personnel, prisoner medical records, and backlog reports; failing to supervise and monitor its personnel's compliance with its contract with the DOC; and failing to enforce written procedures. (Doc. 65, pp. 32–33.)

14

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous when a claim turns on a failure to train" or supervise. *Id.* A failure to train or supervise "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* at 61, (internal citation and quotation marks omitted). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan County Okl. v. Brown*, 520 U.S. 397, 410 (1997).

Where, as here, Plaintiffs seeks to impose liability against Defendant CCS based on its failure to train or supervise, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S.Ct. 1350 (quoting *Brown*, 520 U.S. at 409, 117 S.Ct. 1382). "Policymakers' *continued adherence* to an approach that they know or should know failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their action—the deliberate indifference—necessary to trigger municipal liability." *Id.* "Without notice that a course of training is deficient in a

particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (emphasis added)(internal citation and quotation marks omitted).  Here, Plaintiff has set forth allegations of such disregard by citing similar actions against CCS at both SCI-Rockview and other prisons.  (Doc. 65, pp. 33–37.)  Therefore, the Eighth Amendment claims against Defendant CCS will not be dismissed.

### 3.  Defendant Dominicis

Plaintiff brought an Eighth Amendment deliberate indifference claim against Defendant Dominicis based on his supervisory role as CEO at CCS.  (Doc. 65, p. 69–71.)  Defendant Dominicis was not named in the original complaint.  (Doc. 1-2.)  Therefore, this it the first time the court is addressing this claim.

Supervisory liability under § 1983 utilizes the same standard as municipal liability.  *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999).  A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights.  *See Id*. at 357.  To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying

violation resulted from the failure to employ the supervisory practice.  *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)).

Here, Plaintiff premises Defendant Dominicis' liability on the fact that he is CEO of CCS and supervises the duties of CCS under its contract with the DOC. (Doc. 65, pp. 69–71.)  In doing so, Plaintiff raises general claims of a failure to supervise, failure to train, and failure to monitor.  (*Id.*)  Reading the complaint liberally, Plaintiff has alleged sufficient facts to state a claim against Defendant Dominicis.  Therefore, the claim will not be dismissed.

## C. All Negligence Claims Will Be Dismissed.

Plaintiff's amended complaint brings negligence per se and negligent infliction of emotional distress claims.  (Doc. 65.)  There is currently a controversy between the parties regarding the certificates of merits for the medical negligence claims that have been raised in the amended complaint.  Therefore, the court will first address whether Plaintiff has filed valid certificates of merit.  Then the court will address the negligence per se and negligent infliction of emotional distress claims.

### 1.  Certificates of Merit

Plaintiff filed what he asserts are certificates of merit concerning his negligence claims associated with the dental treatment he received, or did not

receive, for what he defines as a dental emergency.  (Doc. 88.)  Defendants have

moved to have these certificates stricken from the record.  (Docs. 89, 91.)  Plaintiff

has moved for the court to "issue a determination regarding the necessity of

[certificates of merit] for all defendants."  (Doc. 94.)

　　　In Pennsylvania, medical negligence, or medical malpractice, is defined as

"the unwarranted departure from generally accepted standards of medical practice

resulting in injury to a patient, including all liability-producing conduct arising

from the rendition of professional medical services."  *Toogood v. Owen J. Rogal*,

D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d

338 (Pa. 1939)).  To establish a cause of action for negligence under Pennsylvania

law, a plaintiff must prove the following elements: (1) a duty or obligation

recognized by law; (2) a breach of that duty; (3) a causal connection between the

conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut.*

*Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67

F.3d 1103, 1117 (3d Cir. 1995)).

　　　Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging

professional negligence to file a certificate of merit within 60 days of filing the

complaint.  Pa. R. Civ. P. 1042.3.  The certificate must include one of the

following: a written attestation by "an appropriate licensed professional" that there

is a "reasonable probability that the care, skill or knowledge exercised or

exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed.  Pa. R. Civ. P. 1042.3(a)(1)-(3).  Failure to file a certificate of merit is fatal to a plaintiff's claim.  Pa. R. Civ. P. 1042.7.

The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby*, P.C., 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law.  *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury."  *Toogood*, 824 A.2d at 1145.  A

very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

First, the court notes that Plaintiff's negligence claims are presented as negligence per se based on the alleged violation DOC policy. *See infra*. Therefore, Plaintiff's negligence claims are not presented as traditional medical negligence claims. However, reading the amended complaint liberally, it appears that Plaintiff is attempting to raise a medical negligence claim despite labeling it a negligence per se claim. Therefore, the court will address the certificates of merit filed by Plaintiff.

Plaintiff has filed what he believes to be certificates of merit that included a letter from a licensed practical nurse. (Doc. 88.) Defendants have filed motions to strike these certificates. (Docs. 89, 90.) In response, Plaintiff has requested a determination by the court regarding the necessity of certificates of merit in this case. (Doc. 94.)

First, Plaintiff's motion for a determination will be denied. The law regarding certificates of merit in medical negligence claims is set forth above.

20

Second, the motions to strike will be granted because a licensed practice

nurse does not qualify as "an appropriate licensed professional."  Rule 1042.3

includes a note defining "an appropriate licensed professional" as follows:

> It is not required that the "appropriate licensed professional" who
> supplies the necessary statement in support of a certificate of merit
> required by subdivision (a)(1) be the same person who will actually
> testify at trial. It is required, however, that the "appropriate licensed
> professional" who supplies such a statement be an expert with sufficient
> education, training, knowledge and experience to provide credible,
> competent testimony, or stated another way, the expert who supplies
> the statement must have qualifications such that the trial court would
> find them sufficient to allow that expert to testify at trial. For example,
> in a medical professional liability action against a physician, the expert
> who provides the statement in support of a certificate of merit should
> meet the qualifications set forth in Section 512 of the Medical Care
> Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.512.

Pa. R. Civ. P. 1042.3(a)(1).  A licensed practical nurse is not an expert with

sufficient education, training, knowledge, and experience to provide credible,

competent testimony regarding the standard of care required by a dentist or a

dental practice in general.  Therefore, the court will grant Defendants' motions and

the certificates will be stricken from the record.

Third, in light of the certificates of merit being stricken from the record,

Plaintiff has failed to supply the required certificate of merit within the 60-day time

period provided by rule.  Therefore, any claim of medical negligence potentially

raised in the amended complaint will be dismissed without prejudice.  *See Stoud v.*

*Abington Mem. Hosp.*, 546 Supp. 2d 238, 250 (E.D. Pa. 2008) ("[T]he proper

procedure in federal practice is to file with the court a motion pursuant to Fed. R.
Civ. P. 12(b) to dismiss the professional negligence claim without prejudice" based
on this missing certificate of merit.).

### 2.  Negligence Per Se

Negligence per se is not a distinct cause of action but rather an evidentiary
presumption that a defendant's violation of a legislative or regulatory enactment
constitutes proof of a breach of duty.  *See Daniel Boone Area Sch. Dist. v. Lehman
Bros.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) ("The effect of such a rule is to
stamp the defendant's conduct as negligence, with all the effects of common law
negligence, but with no greater effect.").  In order to establish negligence *per se* in
Pennsylvania, a plaintiff must allege: "(1) the purpose of the statute [is], at least in
part, to protect the interest of a group of individuals, as opposed to the public
generally; (2) the statute or regulation must clearly apply to the conduct of the
defendant; (3) the defendant must violate the statute or regulation; and (4) the
violation of the statute must be the proximate cause of the plaintiff's injuries."
*Ramalingam*, 121 A.2d at 1042–43 (citing *Schemberg v. Smicherko*, 85 A.3d 1071,
1073–74 (Pa. Super. 2014) (citation omitted)).

Here, Plaintiff is basing his theory of negligence per se on his allegations
that Defendants violated DOC polices 13.1.1 and 13.2.1.  (Doc. 65.)  However,
DOC policy does not have the force of law and does not rise to the level of a

22

regulation. *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. Mar. 26, 2008) *citing Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004). Therefore, the evidentiary presumption of negligence per se does not apply in this action, and the negligence claims as presented in the amended complaint will be dismissed without prejudice.

### 3. Negligent Infliction of Emotional Distress

Plaintiff brings a negligent infliction of emotional distress claim against all Defendants. (Doc. 65.)

Negligent infliction of emotion distress claims address "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another[.]" *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). To set forth a claim for negligent infliction of emotional distress in Pennsylvania, a plaintiff must also establish at least one of the following factual scenarios:

> (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp.3d 393, 409 (M.D. Pa. 2020) (citing *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.3d 25, 27–28 (Pa.

Super. 2000)); *see also Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011) (describing the elements of a claim for negligent infliction of emotional distress in Pennsylvania); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (citing § 46 of the Restatement (Second) of Torts "as setting forth the minimum elements necessary to sustain such a cause of action."). However, the Pennsylvania Supreme Court has not definitively recognized a negligent infliction of emotional distress claim based on a contractual or fiduciary duty. *See LaLoup v. United States*, 92 F. Supp. 3d 340, 348 (E.D. Pa. 2015) (citing the non-precedential *Toney v. Chester County Hospital*, 614 Pa. 98, 95 (2011), in which the Pennsylvania Supreme Court decided that negligent infliction of emotional distress claims predicated on pre-existing relationships are limited to those relationships "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach . . . [and] the special relationships must encompass an implied duty to care for the plaintiff's emotional well-being. The potential emotional harm must not be the type that a reasonable person is expected to bear.")

Therefore, the special relationship scenario that Plaintiff is attempting to plead in his amended complaint has not been recognized by the Pennsylvania Supreme Court, and the claim will be dismissed.

### D. Summary Judgment Will Be Denied as to the Eighth Amendment Claim Against Defendant Fisher and Will Be Granted as to the Eighth Amendment Claim Against Defendants CCS and Dominicis.

Defendants Fisher, CCS, and Dominicis, include an alternative motion for summary judgment in their motion to dismiss seeking summary judgment on the Eighth Amendment claim under the theory that Plaintiff failed to exhaust his administrative remedies prior to filing the instant action.  (Docs. 74, 75.)

### 1.  Summary Judgment Standard

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288

(3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial."  *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 2. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88)). "[C]ompliance with the administrative remedy scheme" means "substantial" compliance with the prison's grievance procedures. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77–

27

78) (3d Cir. 2000).  Failure to exhaust available administrative remedies is an affirmative defense.  *Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir. 2002).

### i. Grievance 842304

Defendants allege that the only grievance that Plaintiff fully exhausted on the issue of his dental treatment was Grievance 842304, and in it he failed to name Defendants Fisher, CCS, or Dominicis.  (Doc. 75, pp. 17–21.)  Plaintiff does not allege any other grievances were fully adjudicated.  (Doc. 80.)

On January 2, 2020, Plaintiff filed Grievance 842304 regarding his dental treatment naming "dental staff" as the individuals whose actions needed to be addressed.  (Doc. 75-1, p. 5.)  On January 24, 2020, the grievance was initially denied, citing Plaintiff's refusal to have his tooth extracted in January of 2020 and referenced Plaintiff's failure to appear at a dental appointment in August of 2020.  (*Id*., p. 6.)  Plaintiff appealed this determination.  (*Id*., pp. 2–5, 8–10.)

On May 7, 2020, the Secretary's Office of Inmate Grievances and Appeals entered its final appeal decision upholding the initial response to the grievance and stating, in part, that "it is noted that the timing of responses to dental sick call requests needs to be improved and the matter was discussed with the Health Care Administrator.  These clinical decision are made by your attending dentist."  (*Id*., p. 1.)

### ii. Defendant Fisher

The court previously addressed Defendant Fisher's argument that Plaintiff failed to name her in his grievance and found that she was referred to by her title in the Final Appeal Decision to the plaintiff's grievance.  (Doc. 39, p. 12.)  Therefore, the court will not readdress the issue now.  Summary judgment in favor of Defendant Fisher on the Eighth Amendment claim will be denied for the same reason.

### iii. Defendants CCS and Dominicis

Unlike Defendant Fisher, the grievance and the responses to the grievance do not identify Defendants CCS or Dominicis by name or by title.  "Failure to identify a named defendant on a grievance form, absent a 'justifiable excuse,' constitutes failure to properly exhaust as to that defendant."  *Sargent v. Larson*, No. 1:17-CV-511, 2019 WL 1316024 at *3 (M.D. Pa. Mar. 22, 2019) *citing Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005).  Therefore, the court will grant summary judgment as to the Eighth Amendment claims against Defendants CCS and Dominicis.

## CONCLUSION

For the foregoing reasons, the court will grant Defendants' motions to dismiss in part and deny in part. Specifically, the court will dismiss all negligence per se and negligent infliction of emotional distress claims. The court will not dismiss the Eighth Amendment deliberate indifference claims. The court will deny Defendants' motion for summary judgment as to Defendant Fisher on the Eighth Amendment claim, and will grant Defendant's motion for summary judgment as to Defendants CCS and Dominicis on the Eighth Amendment claim. The court will deny Plaintiff's motion for a determination regarding the need for certificates of merit. The court will grant Defendants' motions to strike the certificates of merit.

Furthermore, the court notes that Plaintiff filed a letter requesting an extension of time for discovery in the event that his *Monell* claim against Defendant CCS survived the pending motions. (Doc. 99.) Considering all claims against CCS have been dismissed or resolved by summary judgment, Plaintiff's request for an extension of discovery will be denied.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 17, 2023